# Matter of Luis CASTILLO-PADILLA, Respondent

File A088 010 212 - Miami, Florida

*Decided June 18, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Conditional parole under section 236(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a)(2)(B) (2006), is a distinct and different procedure from parole under section 212(d)(5)(A) of the Act, 8 U.S.C. § 1182(d)(5)(A) (2006).

(2)  An alien who was released from custody on conditional parole pursuant to section 236(a)(2)(B) of the Act has not been "paroled into the United States" for purposes of establishing eligibility for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006).

FOR RESPONDENT:  Rodrigo Vilar, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY:  James T. Dehn, Appellate Counsel; Eric Aurelius, Assistant Chief Counsel

BEFORE:  Board Panel:  GRANT, MALPHRUS, and MULLANE, Board Members.

MULLANE, Board Member:

In a decision dated January 24, 2008, an Immigration Judge found the respondent removable from the United States and denied his application for adjustment of status.  The respondent has appealed from that decision. A three-member panel of the Board heard oral argument on February 4, 2010. The respondent's appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico.  The Department of Homeland Security ("DHS") issued a Notice to Appear (Form I-862) on October 20, 2006, alleging that the respondent came to the United States "on or about October 15, 1999," and that he had not been "admitted or paroled after inspection by an Immigration Officer."  The respondent was charged

under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), as an alien who is present in the United States without being admitted or paroled.  The respondent was detained at the Krome Service Processing Center and was released by the DHS on a $12,000 cash bond on November 9, 2006.  He was issued a Form I-94 (Arrival-Departure Record) with a stamp indicating that he was released after posting the bond.

Before the Immigration Judge, the respondent conceded that he was removable as charged and sought to apply for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006), based on his marriage to a United States citizen.  The Immigration Judge denied the respondent's application for relief, finding that although he was released from custody and given a Form I-94, he had not been "paroled into the United States," as required by section 245(a) to establish eligibility for adjustment of status. Furthermore, the Immigration Judge concluded that the respondent was ineligible to adjust his status under section 245(i) of the Act because of the filing date of his visa petition.

## II.  ISSUE

The issue in this case is whether an alien who has been released from custody on conditional parole pursuant to section 236(a)(2)(B) of the Act, 8 U.S.C. § 1226(a) (2006), has been "paroled into the United States" for purposes of establishing eligibility for adjustment of status under section 245(a) of the Act.

## III.  ANALYSIS

On appeal and at oral argument, the respondent conceded that he was not paroled under section 212(d)(5)(A) of the Act.  However, he asserts that he received "conditional parole" under section 236(a)(2)(B) and that he is therefore eligible to adjust his status under section 245(a).  The DHS argues that the respondent is not eligible for adjustment of status because his release from custody on conditional parole does not amount to being paroled into the United States.  We review de novo the Immigration Judge's determination on this issue of law.  8 C.F.R. § 1003.1(d)(3)(ii) (2010); *Matter of A-S-B-*, 24 I&N Dec. 493 (BIA 2008).  For the reasons set forth below, we conclude that "conditional parole" under section 236(a)(2)(B) of the Act is a distinct and different procedure from "parole" under section 212(d)(5)(A) and that the respondent is not eligible to adjust his status under section 245(a) based on his conditional parole.

Parole is described in section 212(d)(5)(A) of the Act, which provides as follows:

> The Attorney General may, except as provided in subparagraph (B) or in section 214(f), in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Conditional parole is described in section 236(a) of the Act, which provides, in pertinent part, as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>   (B) conditional parole . . . .

An alien paroled into the United States under section 212(d)(5) of the Act is authorized to come into the United States "temporarily" for urgent humanitarian reasons or significant public benefit and under strict conditions defining his or her status. After the purpose of the parole has been served, the alien returns to custody, and his or her case is dealt with in the same manner as any other applicant for admission.

In contrast, section 236(a) does not place any such restrictions on an alien who is released on conditional parole. The alien is merely released from detention "pending a decision on whether the alien is to be removed from the United States." Section 236(a) of the Act.

The respondent has not adequately explained how his release from custody on a $12,000 bond constitutes conditional parole. Nevertheless, even if, as he contends, he was afforded "conditional parole" under section 236(a)(2)(B) of the Act, this is not the same as "parole into the United States," so he would not be eligible for adjustment of status under section 245(a).

The respondent's argument fails based on the plain language of the statute. *See Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997) (stating that issues regarding whether statutory language has a plain and unambiguous meaning are "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"). Under section 245(a) of the Act, adjustment of status is available only to aliens who were "inspected and admitted or paroled into the United States." It is true that section 236(a)(2)(B) uses the phrase "conditional parole," but that is not the phrase used in section 245(a). Section 245(a) uses the phrase "paroled into the United States," which is identical to the language used in section 212(d)(5)(A) of the Act.

Moreover, even if the statutory provisions at issue here were considered ambiguous, we would reach the same conclusion, because interpreting a release from custody under section 236(a) to be the equivalent of "parole into the United States" under section 212(d)(5)(A) would create conflicts within the regulatory and statutory schemes. For example, the respondent's interpretation would present a conflict with section 245(i) of the Act. Congress enacted section 245(i) to permit aliens who entered the United States without inspection to adjust status, but only under certain specified conditions. If release from custody under section 236(a) were equated with parole under section 212(d)(5)(A), an unlawful entrant who was detained and released from custody on conditional parole could seek adjustment under the provisions of section 245(a), even if the restrictive eligibility requirements of section 245(i) specified by Congress could not be met. Thus, an alien released from detention would be placed in a better position—as a direct result of that detention—than another alien who came into the country illegally but was not detained and released. In addition, under the respondent's interpretation, aliens who were released from custody under section 236(a) would cease to accrue unlawful presence under section 212(a)(9)(B)(i) of the Act, because an alien is only deemed to be unlawfully present under section 212(a)(9)(B)(ii) if he or she is present in the United States "without being admitted or paroled." We are not persuaded that Congress intended these results. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1120 (9th Cir. 2007) (finding that it would be "odd" to read section 245(a) of the Act as authorizing unlawful entrants who do not meet the conditions of section 245(i) to seek adjustment of status when they are conditionally paroled under section 236(a)).

The regulations also support the conclusion that parole and conditional parole are distinct procedures that cannot be equated. The regulations provide that both the Attorney General and the Secretary of Homeland Security have the authority to make custody determinations under section 236(a) of the Act.

*See, e.g.*, *Matter of D-J-*, 23 I&N Dec. 572, 574 n.3 (A.G. 2003); 8 C.F.R. §§ 1003.19, 1236.1(d) (2010). However, the parole authority under section 212(d)(5)(A) of the Act, which previously was exclusively delegated to the former Immigration and Naturalization Service, is now delegated solely to the Secretary of Homeland Security following the dissolution of the Service and the creation of the DHS.[1] *See* 8 C.F.R. § 212.5 (2010); *see also Matter of United Airlines Flight UA802*, 22 I&N Dec. 777, 782 (BIA 1999) (stating that the Board could not review the Service's decision to parole an alien into the United States because the district director had exclusive jurisdiction to parole under 8 C.F.R. § 212.5(a)). Since the Attorney General has no parole authority under section 212(d)(5)(A), it would be inconsistent with the regulations to consider the two types of parole as equivalent.

Additionally, the regulations relating to parole under section 212(d)(5)(A) of the Act provide different standards from those in the regulations regarding conditional parole. Pursuant to 8 C.F.R. § 236.1(c)(8) (2010), an alien may be released from custody on conditional parole under section 236(a) of the Act only if "such release would not pose a danger to property or persons, and . . . the alien is likely to appear for any further proceeding."

In contrast, the regulations at 8 C.F.R. § 212.5(b) relating to parole require a determination by the DHS on a case-by-case basis that permission to come into the country temporarily should be granted to an alien for "urgent humanitarian reasons" or "significant public benefit" and that the alien presents no security risk or risk of absconding. Furthermore, 8 C.F.R. § 212.5 specifies procedures for the termination of parole. For example, parole is automatically terminated upon the alien's departure from the country or at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1). Parole is also terminated when a charging document is served on the alien, which is considered a written notice of termination of parole unless otherwise specified. 8 C.F.R. § 212.5(e)(2)(i).

In this case, the respondent suffered no conditions or restrictions on his status after the payment of bond, and there was no determination that he should be permitted to come into the country temporarily for urgent humanitarian reasons or significant public benefit. *Compare* section 212(d)(5)(A) of the Act *and* 8 C.F.R. § 212.5 *with* section 236(a) of the Act *and* 8 C.F.R. § 236.1(c)(8). As previously noted, the respondent was detained by the DHS and was granted bond by an Immigration Judge. He was issued

---

[1] The functions of the Immigration and Naturalization Service were transferred to the Department of Homeland Security on March 1, 2003, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. *See Matter of D-J-*, 23 I&N Dec. at 573 n.1.

a Form I-94 indicating that he was released on bond, but the document was not "endorsed with the parole stamp," as required by the regulations when an alien is granted parole under section 212(d)(5)(A) of the Act. 8 C.F.R. § 235.1(h)(2) (2010). Thus, pursuant to section 236(a) of the Act, he was merely released from custody "pending a decision on whether [he] is to be removed from the United States."

In *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, the United States Court of Appeals for the Ninth Circuit addressed whether an alien who received conditional parole under section 236(a) of the Act can establish eligibility for adjustment under section 245(a). Considering the legislative history and purposes of the same statutory provisions at issue here, the court determined that release from custody on conditional parole under section 236(a)(2)(B) is a distinct and different procedure from parole under section 212(d)(5)(A). *Id.* at 1116-20. Thus the court concluded, as do we, that an alien granted conditional parole is not eligible to adjust status under section 245(a) of the Act as an alien who was "paroled into the United States." *Id.*

In this case, the respondent was issued a Form I-94, which, as noted by the Ninth Circuit, is "typically provided to aliens 'parole[d] into the United States' pursuant to [section 212(d)(5)(A) of the Act]." *Id.* at 1112. Nevertheless, while it is unclear why the local DHS Immigration and Customs Enforcement office would issue a Form I-94 to an alien granted bond by an Immigration Judge, as was done in this case, the Form I-94 does not contain the stamp, as required by regulation, indicating that the respondent was granted parole under section 212(d)(5)(A) of the Act. 8 C.F.R. § 235.1(h)(2). Rather, it contains a stamp that explicitly states that the respondent was released from custody after posting a $12,000 bond and appears to merely memorialize his release on bond. Thus, although the respondent did receive a Form I-94, there is no evidence to indicate that the Government intended to parole him into the United States pursuant to section 212(d)(5)(A). *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111.

Finally, we will address the internal guidance memoranda issued by the former Immigration and Naturalization Service and the DHS on this subject. While the respondent does not rely on the memoranda to support his claim, they were noted by the DHS in its supplemental briefing and were discussed at oral argument. The first memorandum on the subject of "Authority to parole applicants for admission who are not also arriving aliens" was issued in 1998. Memorandum from Paul Virtue, for Bo Cooper, INS General Counsel, to INS officials, Legal Op. 98-10 (Aug. 21, 1998), 1998 WL 1806685. A second memorandum discusses the "Eligibility for Permanent Residence Under the Cuban Adjustment Act Despite having Arrived at Place Other than

a Designated Port-of-Entry." Memorandum from Doris Meissner, Commissioner, to INS officials (Apr. 19, 1999), *reprinted in* 76 Interpreter Releases, No. 17, May 3, 1999, app. 1 at 676, 684.

An argument could be made that these two memoranda equated conditional parole under section 236(a)(2)(B) of the Act with parole under section 212(d)(5)(A). However, the Ninth Circuit rejected this argument, principally because the memoranda do "not expressly state that every alien who is conditionally paroled under § 1226(a) necessarily becomes eligible for adjustment of status under § 1255(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d at 1118-19. The court also agreed with our conclusion in that case that such internal guidance memoranda are not binding authority. *Id.* at 1119. As we have held in other contexts, policy memoranda are intended for internal agency use and are not binding on the Board or Immigration Judges. *See Matter of Tijam*, 22 I&N Dec. 408, 416 (BIA 1998); *Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980).

Even if these memoranda could be relied on as support for the respondent's interpretation of the statute, a 2007 DHS memorandum entitled "Clarification of the Relation Between Release Under Section 236 and Parole Under Section 212(d)(5) of the Immigration and Nationality Act" expressly superseded the paragraph in the 1998 memorandum that could be read as equating conditional parole under section 236(a)(2) with parole under section 212(d)(5)(A). Memorandum from Gus P. Coldebella, DHS General Counsel, to DHS officials (Sept. 28, 2007), http://www.bibdaily.com/ (keyword "parole") (last visited June 17, 2010) ("DHS Memorandum"). The memorandum further directed that the paragraph "be given no weight or effect by the [DHS] and its component agencies."[2] *Id.* at 2. Thus, whatever limited weight the first two memoranda may have had in this regard no longer exists.

In light of the above, we conclude that the Immigration Judge correctly determined that conditional parole under section 236(a)(2)(B) of the Act is a distinct and different procedure from parole under section 212(d)(5)(A) and that the respondent is not eligible to adjust his status under section 245(a) of the Act on the basis of his release from custody on conditional parole. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[2] In reaching its conclusion, the memorandum also provides a detailed discussion of the historical use of the term "conditional parole," differentiating the procedure from the concept of parole under section 212(d)(5)(A) of the Act. DHS Memorandum, *supra*, at 3 n.3.