09-3155-ag, 09-3156-ag, 09-3157-ag, 09-5176-ag
Cruz-Miguel et al v. Holder,
Sanchez-Flores v. Holder,
Miguel-Ramirez v. Holder,
Francisco-Lorenzo v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Argued:  April 14, 2011     Decided: April 27, 2011)

Docket Nos. 09-3155-ag, 09-3156-ag, 09-3157-ag, 09-5176-ag

(Consolidated for disposition)

————————

GUSTAVO CRUZ-MIGUEL,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

————————

FRANCISCO JAVIER SANCHEZ-FLORES,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

————————

ROGELIO MIGUEL-RAMIREZ,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

PABLO FRANCISCO-LORENZO,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.[*]

_____

Before:

RAGGI, LOHIER, *Circuit Judges*, PRESKA, *Chief District Judge*.[**]

_____

Petitioners challenge orders of removal from the United States, submitting that the Board of Immigration Appeals erred in concluding that they were statutorily ineligible for adjustment of status because their release on "conditional parole" under § 236(a)(2)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a)(2)(B), does not satisfy the "paroled into the United States" requirement of INA § 245(a), id. § 1255(a).

Petitions for review DENIED.

_____

[*] The Clerk of the Court is directed to amend the captions to read as shown above.

[**] Chief Judge Loretta A. Preska of the United States District Court for the Southern District of New York, sitting by designation.

2

SUSAN N. BURGESS, Law Office of Susan N. Burgess, Brockport, New York, *for Petitioners Gustavo Cruz-Miguel, Francisco Javier Sanchez-Flores, Rogelio Miguel-Ramirez.*

ANNE E. DOEBLER, Anne E. Doebler, P.C., Buffalo, New York, *for Petitioner Pablo Francisco-Lorenzo.*

REMI ADALEMO, R. ALEXANDER GORING, Trial Attorneys (Tony West, Assistant Attorney General, Civil Division; Blair T. O'Connor, Michelle G. Latour, Douglas E. Ginsburg, Assistant Directors; Francis W. Fraser, Senior Litigation Counsel; Steven F. Day, Lisa Morinelli, Trial Attorneys, *on the briefs*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent.*

REENA RAGGI, *Circuit Judge*:

Gustavo Cruz-Miguel, Francisco Javier Sanchez-Flores, and Rogelio Miguel-Ramirez, citizens of Mexico, and Pablo Francisco-Lorenzo, a citizen of Guatemala, petition for review of removal orders that became final after the Board of Immigration Appeals ("BIA") dismissed their appeals from decisions of Immigration Judge ("IJ") Michaelangelo Rocco that found each man removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), see 8 U.S.C. § 1182(a)(6)(A)(i), and ineligible for adjustment of status under INA § 245(a), see id. § 1255(a).[1] Petitioners submit that the BIA erred in concluding that their "conditional parole" under INA § 236(a)(2)(B), id. § 1226(a)(2)(B), failed to satisfy the "paroled into the United States" requirement of § 1255(a) so as to permit each man to adjust

---

[1] Although we will initially identify relevant statutory provisions by both their section number in the INA and the United States Code, thereafter, for ease of reference, we will employ only the latter.

3

his status to that of a lawful permanent resident. Because we conclude that aliens released on "conditional parole" pursuant to § 1226(a)(2)(B) have not been "paroled into the United States" within the meaning of § 1255(a), we deny the petitions for review.[2]

## I. Background

### A. Unlawful Entry into the United States and Placement in Removal Proceedings

On different dates between October 1998 and October 2003, petitioners each entered the United States illegally at the nation's southwest border: (1) Cruz-Miguel on October 10, 1998, near Douglas, Arizona; (2) Sanchez-Flores on January 26, 1999, near Eagle Pass, Texas; (3) Francisco-Lorenzo on January 15, 2001, near Phoenix, Arizona; and (4) Miguel-Ramirez on October 10, 2003, near El Paso, Texas. Some years later, petitioners came to the attention of local law enforcement authorities in upstate New York, who notified Department of Homeland Security ("DHS") immigration officials.[3] Upon inspection, DHS served each man with a Form I-862 Notice to Appear and placed him in removal proceedings. The Notice alleged removability based on each man's status as "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or

---

[2] Because petitioners are similarly situated and present essentially the same legal arguments, we consider their petitions for review together and resolve them in this single opinion.

[3] Francisco-Lorenzo was taken into DHS custody on May 6, 2003, after a routine traffic stop near North Collins, New York. Miguel-Ramirez was taken into DHS custody on March 14, 2006, after a traffic accident in Albion, New York. Both Cruz-Miguel and Sanchez-Flores were taken into DHS custody on May 27, 2006, after routine traffic stops in Holley, New York.

place other than as designated by the Attorney General." Id. § 1182(a)(6)(A)(i).

     B.     <u>Release on "Conditional Parole"</u>

On the same day each petitioner was taken into DHS custody, he was released therefrom on his "own recognizance" pursuant to 8 U.S.C. § 1226, pending a final determination of removability. As discussed further <u>infra</u> at 11-12, § 1226(a)(2) permits the executive to release an alien from custody pending a removability determination either on a "bond of at least $1,500" or on "conditional parole." Id. § 1226(a)(2)(A)-(B). All parties appear to agree that petitioners were released on "conditional parole." Certainly, none of the petitioners was provided with a Form I-94 Arrival-Departure Record or other document indicating that he had been granted "parole into the United States" under INA § 212(d)(5)(A), which, as discussed further <u>infra</u> at 11, permits the executive to parole aliens into the United States temporarily for "urgent humanitarian reasons" or to achieve a "significant public benefit." Id. § 1182(d)(5)(A).[4]

---

     [4] At oral argument, counsel for Francisco-Lorenzo urged that her client's release on "conditional parole" might be considered a "parole into the United States" within the meaning of 8 U.S.C. § 1182(d)(5)(A) because, in her view, the INA contemplates a single type of parole. As discussed further <u>infra</u> at 18-21, we reject this unitary view of parole under the statute. Because Francisco-Lorenzo concedes that, as a factual matter, he was conditionally paroled under § 1226(a)(2)(B), not paroled under § 1182(d)(5)(A), the question before us remains whether conditional parole satisfies the "paroled into the United States" requirement under § 1255(a).

5

C.    Removal Proceedings

Before the IJ, petitioners acknowledged that they had entered the United States illegally, i.e., without inspection and without being admitted or paroled into this country upon arrival.[5] Petitioners nevertheless moved to terminate removal proceedings, contending that they were entitled to seek adjustment of status to that of lawful permanent residents under Id. § 1255(a).[6] That section, discussed further infra at 9-10, allows the executive to grant an adjustment of status, inter alia, to "an alien who was inspected and admitted or paroled into the United States." Id. Petitioners argued to the IJ that their release on "conditional parole" under § 1226(a)(2)(B) satisfied the "paroled into the United States" requirement of § 1255(a). The IJ concluded otherwise, holding that petitioners were statutorily ineligible for adjustment of status and removable as charged. See In re Cruz-Miguel, et al., Nos. A 098 929 367, A 095 966 008, A 076 025 155 (Immig. Ct. Buffalo, N.Y. Aug. 16, 2007); In re Francisco-

---

[5] Removal proceedings for Cruz-Miguel, Sanchez-Flores, and Miguel-Ramirez were consolidated before IJ Rocco. Francisco-Lorenzo's removal proceeding was conducted separately before IJ Rocco.

[6] Petitioners claimed that they were entitled to adjust their status as beneficiaries of Form I-130 Visa Petitions for Alien Relatives filed by their U.S.-citizen spouses. See 8 U.S.C. § 1154(a)(1)(A)(i). Francisco-Lorenzo and Cruz-Miguel married U.S. citizens on July 18, 2002, and February 20, 2005, respectively, approximately one year prior to each man's placement in removal proceedings. By contrast, Sanchez-Flores and Miguel-Ramirez married U.S. citizens on June 10, 2006, and June 18, 2006, respectively, both after commencement of their removal proceedings. Cruz-Miguel's I-130 petition was approved prior to his removal proceedings, but the I-130 petitions of the three other petitioners were still pending at the time the IJ ruled on their removability.

6

Lorenzo, No. A 097 302 010 (Immig. Ct. Buffalo, N.Y. Dec. 21, 2007).[7]

Petitioners appealed to the BIA. In separate unpublished decisions, the BIA affirmed the IJ's removal decision and dismissed the appeals. See In re Cruz-Miguel, No. A 098 929 367 (B.I.A. June 25, 2009); In re Miguel-Ramirez, No. A 095 966 008 (B.I.A. June 25, 2009); In re Sanchez-Flores, No. A 076 025 155 (B.I.A. June 25, 2009); In re Francisco-Lorenzo, No. A 097 302 010 (B.I.A. Nov. 17, 2009). In doing so, the BIA ruled that petitioners were not eligible to adjust their status because release on "conditional parole" under § 1226(a)(2)(B) is not the same as having been "paroled into the United States" within the meaning of § 1255(a).[8] Petitioners timely filed petitions for review.

## II.    Discussion

Petitioners contend that the BIA erred in failing to equate release on "conditional parole" under 8 U.S.C. § 1226(a)(2)(B) with having been "paroled into the United States" for purposes of establishing eligibility for adjustment of status under 8 U.S.C. § 1255(a). To

---

[7] The IJ had first concluded that Francisco-Lorenzo was ineligible for adjustment of status and removable in In re Francisco-Lorenzo, No. A 097 302 010 (Immig. Ct. Buffalo, N.Y. July 28, 2004), which was affirmed by the BIA in In re Francisco-Lorenzo, No. A 097 302 010 (B.I.A. Jan. 19, 2006). On Francisco-Lorenzo's petition for review by this court, the parties stipulated to vacatur of the BIA's decision, see Stipulation & Order of Settlement & Dismissal, Francisco-Lorenzo v. Gonzales, No. 06-0768-ag (2d Cir. Jan. 23, 2007), and the case was remanded to the IJ for further proceedings. It is the IJ's decision on remand, as affirmed by the BIA, that is the subject of Francisco-Lorenzo's instant petition.

[8] Because we deny review on this ground, we need not address the merits of the BIA's further conclusion that petitioners were ineligible for adjustment of status under either (1) 8 U.S.C. § 1255(a), due to their unlawful entry into the United States; or (2) 8 U.S.C. § 1255(i), due to their failure to file visa petitions on or before April 30, 2001. See, e.g., In re Cruz-Miguel, No. A 098 929 367, at 2 (B.I.A. June 25, 2009).

7

date, three of our sister circuits have considered this same argument and uniformly rejected it. See Delgado-Sobalvarro v. Attorney Gen. of the U.S., 625 F.3d 782 (3d Cir. 2010) (according Chevron deference to BIA's precedential decision in In re Castillo-Padilla, 25 I. & N. Dec. 257 (B.I.A. 2010)); Ortega-Cervantes v. Gonzales, 501 F.3d 1111 (9th Cir. 2007) (relying on construction of language and history of statute); see also Castillo-Padilla v. U.S. Att'y Gen., No. 10-13273, 2011 WL 880846 (11th Cir. Mar. 15, 2011) (unpublished) (ruling in the alternative). We here reach the same conclusion. The language of the relevant INA provisions makes plain that an alien released on conditional parole pending resolution of ongoing removal proceedings is not thereby "paroled into the United States" so as to be eligible for adjustment of status under § 1255(a). Even if we were to identify statutory ambiguity on this point, we would accord Chevron deference to the BIA's reasonable construction of the statute in In re Castillo-Padilla, 25 I. & N. Dec. 257. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

    A.    Jurisdiction and Standard of Review

Federal courts lack jurisdiction to review a discretionary denial of adjustment of status. See 8 U.S.C. § 1252(a)(2)(B)(i); Ruiz v. Mukasey, 552 F.3d 269, 275 n.4 (2d Cir. 2009). We retain jurisdiction, however, to review "constitutional claims or questions of law raised upon a petition for review," 8 U.S.C. § 1252(a)(2)(D), including whether an alien is eligible for adjustment of status, see Aslam v. Mukasey, 537 F.3d 110, 115 (2d Cir. 2008). Because the question of eligibility for adjustment of status is one of law, our standard of review is de novo. See Lecaj v. Holder, 616 F.3d 111, 114 (2d Cir. 2010). Where the

8

question turns on the proper construction of statutory provisions that have been the subject of a precedential decision by the administering agency, we will defer to a reasonable agency interpretation, see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843-44; Wellington v. Holder, 623 F.3d 115, 118 (2d Cir. 2010), but only if traditional canons of statutory construction and a review of legislative history do not permit us to discern Congress's intent for ourselves, see General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004); Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007).

B.      Relevant Statutory Provisions

We begin by reviewing the pertinent statutory provisions.

1.      Adjustment of Status Under 8 U.S.C. § 1255(a)

Title 8 U.S.C. § 1255(a) identifies aliens who may seek "adjustment of status," a discretionary benefit that allows certain aliens present in the United States to become lawful permanent residents.  See generally Brito v. Mukasey, 521 F.3d 160, 164-65 (2d Cir. 2008); Delgado v. Mukasey, 516 F.3d 65, 69 (2d Cir. 2008); see also Succar v. Ashcroft, 394 F.3d 8, 13-14 (1st Cir. 2005).  In general, aliens may apply for adjustment of status if they have been "inspected and admitted or paroled into the United States":

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added); see also 8 C.F.R. § 245.1.

9

Aliens "physically present in the United States" who "entered the United States without inspection" are not eligible for adjustment of status except under the circumstances set forth in 8 U.S.C. § 1255(i). That section permits aliens who entered the United States unlawfully to apply for adjustment of status if they are the beneficiary of either "a petition for classification" or "an application for a labor certification" filed on or before April 30, 2001, and, if such petition or application was filed after January 14, 1998, they were physically present in the United States on December 21, 2000. 8 U.S.C. § 1255(i)(1)(B)-(C); see Mora v. Mukasey, 550 F.3d 231, 234 (2d Cir. 2008); Delgado v. Mukasey, 516 F.3d at 69. Applicants for adjustment of status under § 1255(i) also must be otherwise "admissible" to the United States. 8 U.S.C. § 1255(i)(2); see Mora v. Mukasey, 550 F.3d at 234.

Petitioners do not contend that they have been "admitted . . . into the United States" within the meaning of § 1255(a). Nor do they assert that they qualify for adjustment of status under § 1255(i).[9] Thus, petitioners' claim that they are eligible to seek adjustment of status depends entirely on their having been "paroled into the United States" within the meaning of § 1255(a).

---

[9] Indeed, because petitioners married U.S. citizens after April 30, 2001, any I-130 petition filed on their behalf by their spouses necessarily post-dated the filing deadline in 8 U.S.C. § 1255(i)(1)(B)(i).

10

2. "Parole" Under 8 U.S.C. § 1182(d)(5)(A) and "Conditional Parole" Under 8 U.S.C. § 1226(a)(2)(B)

In construing the phrase "paroled into the United States" in § 1255(a), we must consider two other statutory sections. The first, 8 U.S.C. § 1182(d)(5)(A), uses the identical phrase, i.e., "parole into the United States," in conferring discretion on the Attorney General to grant such parole under limited circumstances:

> The Attorney General may . . . in his discretion <u>parole into the United States</u> temporarily under such conditions as he may prescribe <u>only on a case-by-case basis for urgent humanitarian reasons or significant public benefit</u> any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added); <u>see also</u> 8 C.F.R. § 212.5.[10] No party disputes that inspected aliens granted "parole into the United States" under § 1182(d)(5)(A) are eligible for adjustment of status under § 1255(a).

The second statutory section requiring consideration, 8 U.S.C. § 1226(a), authorizes the Attorney General to release from custody on either a bond or "conditional parole" an alien awaiting a final removability determination:

> On a warrant issued by the Attorney General, an alien may be arrested and

---

[10] As one of the authorities delegated to the Immigration and Naturalization Service ("INS") by the Attorney General, <u>see</u> <u>Bertrand v. Sava</u>, 684 F.2d 204, 206 (2d Cir. 1982), parole authority under 8 U.S.C. § 1182(d)(5)(A) was transferred from the INS to DHS by the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, <u>see generally</u> <u>Brito v. Mukasey</u>, 521 F.3d at 162 n.2.

detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section [concerning detention of criminal aliens] and pending such decision, the Attorney General–

> (1)    may continue to detain the arrested alien; and
>
> (2)    <u>may release the alien on</u>–
>
> > (A)    <u>bond of at least $1,500</u> with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B)    <u>conditional parole</u>; but
>
> (3)    may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a) (emphasis added); <u>see also</u> 8 C.F.R. § 236.1.

C.    <u>Release on "Conditional Parole" Under § 1226(a)(2)(B) Does Not Satisfy the "Paroled into the United States" Requirement for Adjustment of Status Eligibility Under § 1255(a)</u>

Based on our review of the INA provisions here at issue, we conclude that the statutory text unambiguously manifests Congress's intent that the phrase "paroled into the United States" in § 1255(a) does not reference aliens released on "conditional parole" under § 1226(a)(2)(B).

1.    <u>Text</u>

"Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." <u>Dobrova v. Holder</u>, 607 F.3d 297, 301 (2d Cir. 2010) (internal quotation marks and brackets omitted); <u>see also</u> <u>Jimenez v. Quarterman</u>, 555

12

U.S. 113, 129 S. Ct. 681, 685 (2009). "In conducting such an analysis, we review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." Dobrova v. Holder, 607 F.3d at 301 (internal quotation marks omitted); see also United States v. Fuller, 627 F.3d 499, 504 (2d Cir. 2010) ("[T]he meaning of a particular section in a statute should be understood in context by appreciating how sections relate to one another." (internal quotation marks and alterations omitted)). Applying those principles here, we conclude that the language of the INA signals Congress's intent that adjustment of status under § 1255(a) is not available to aliens who are released on conditional parole pursuant to § 1226(a)(2)(B).

The text of § 1255(a) specifically references aliens "paroled into the United States," a phrase also used in § 1182(d)(5)(A) to confer discretionary authority on the executive to permit, on a case-by-case basis, aliens to enter the country "temporarily . . . for urgent humanitarian reasons or significant public benefit." Nowhere in § 1255(a) does Congress reference "conditional parole," the phrase it employed in § 1226(a)(2)(B) to allow the executive to release "arrested and detained" aliens from immigration custody pending ongoing removal proceedings. This textual distinction by itself signals that Congress intended the phrase "paroled into the United States" in § 1255(a) to reference persons granted "parole into the United States" under § 1182(d)(5)(A), not those released on "conditional parole" under § 1226(a)(2)(B). "Generally, identical words used in different parts of the same statute are presumed to have the same meaning." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006) (internal quotation marks and ellipsis omitted).

13

But where, as here, Congress "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks omitted); accord Mendis v. Filip, 554 F.3d 335, 341 (2d Cir. 2009).

### 2. Context

Our understanding of Congress's intent is only reinforced by viewing the "paroled into the United States" provision of § 1255(a) in the context of the larger statutory scheme that has developed over time.

#### a. Pre-IIRIRA Distinction Between Aliens Subject to "Exclusion" and Those Subject to "Deportation"

The distinction between "parole into the United States" and "conditional parole" is grounded in the INA's differentiation – now eliminated by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546 – between aliens subject to exclusion and those subject to deportation. Prior to IIRIRA, an alien "who entered the United States without inspection or at any time or place other than as designated by the Attorney General" was subject to "deportation." 8 U.S.C. § 1251(a)(1)(B) (1994).[11] By contrast, an alien who, upon arrival at the border, was refused admission into the United States was subject to "exclusion." Id. §§ 1225-1226; see Ibragimov v. Gonzales, 476 F.3d 125, 130 n.11 (2d Cir. 2007) ("'Deportation' proceedings

---

[11] "Entry" was defined as "any coming of an alien into the United States, from a foreign port or place." 8 U.S.C. § 1101(a)(13) (1994); see Patel v. McElroy, 143 F.3d 56, 59 (2d Cir. 1998).

14

were provided to aliens who had formally 'entered' the United States, while 'exclusion' proceedings were provided to aliens who were seeking entry to the United States and therefore were constructively deemed to be at the border.'"); see also Landon v. Plasencia, 459 U.S. 21, 25-26 (1982).

An alien awaiting exclusion proceedings could be temporarily "paroled into the United States" for humanitarian reasons. Ofosu v. McElroy, 98 F.3d 694, 700 (2d Cir. 1996); see also Bertrand v. Sava, 684 F.2d 204, 206 (2d Cir. 1982) (describing Attorney General's discretionary power to "parole an alien into the United States pending the outcome of exclusion hearings" (emphasis added)). Such relief was not available, however, to aliens facing deportation because they were already physically present in the United States and not "applying for admission," 8 U.S.C. § 1182(d)(5)(A) (1994), but rather attempting to avoid "expulsion," see Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 175 (1993) (explaining that aliens physically present in the United States, irrespective of the legality of entry, were understood to be already "within the United States" for purposes of deportation proceedings).[12] Such deportable aliens were arrested and placed in immigration custody, where they could secure release on bond or "conditional parole" on demonstration that they

_____

[12] Although aliens paroled under 8 U.S.C. § 1182(d)(5)(A) physically enter the United States temporarily, they are nevertheless deemed to remain constructively detained at the border. See Ibragimov v. Gonzales, 476 F.3d at 134 (citing Leng May Ma v. Barber, 357 U.S. 185, 191 (1958)); see also 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under [§ 1182(d)(5)(A)] . . . shall not be considered to have been admitted."). Thus, prior to 1996, paroled aliens were considered not to have formally "entered" the United States and, therefore, were subject to exclusion, not deportation, proceedings. See Patel v. McElroy, 143 F.3d at 59.

15

posed no risk of danger or flight. 8 U.S.C. § 1252(a)(1) (1994); see Reno v. Flores, 507 U.S. 292, 294-95 (1993).

### b. Effect of IIRIRA

IIRIRA eliminated the bright-line distinction between exclusion and deportation, merging the two into proceedings for "removal" and replacing the definition of "entry" with that for "admission." Compare 8 U.S.C. § 1101(a)(13) (1994), with 8 U.S.C. § 1101(a)(13) (2006); see Ibragimov v. Gonzales, 476 F.3d at 130 n.11.[13] After IIRIRA, both aliens arriving at the border and aliens already present in the United States without inspection are deemed "applicants for admission," 8 U.S.C. § 1225(a)(1), who must "be inspected by immigration officers" to determine their admissibility, id. § 1225(a)(3); see Ascencio-Rodriguez v. Holder, 595 F.3d 105, 108 n.3 (2d Cir. 2010); see also Ortega-Cervantes v. Gonzales, 501 F.3d at 1116; Succar v. Ashcroft, 394 F.3d at 13, 26-27.[14] If, upon such inspection, an alien is not "clearly and beyond a doubt" admissible, he must be placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

---

[13] Whether an alien has been admitted or is seeking admission is still a relevant distinction for purposes of determining potential grounds for removal. If the alien is seeking admission, he is charged in removal proceedings as an inadmissible alien under 8 U.S.C. § 1182. If the alien has been admitted, however, he is charged in removal proceedings as a deportable alien under 8 U.S.C. § 1227.

[14] Aliens who appear at a port-of-entry seeking to enter the United States but who have not been formally "admitted" are considered "arriving aliens" and "applicants for admission." See 8 C.F.R. § 1.1(q) ("[A]rriving alien means an applicant for admission coming or attempting to come to the United States at a port-of-entry."). An arriving alien remains such even if paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). See id.

Among the categories of "inadmissible" aliens, see generally id. § 1182(a), are those "present in the United States without being admitted or paroled, or who arrive[] in the United States at any time or place other than as designated by the Attorney General," id. § 1182(a)(6)(A)(i); see Mora v. Mukasey, 550 F.3d at 234. Aliens who might otherwise be inadmissible, however, may be granted "parole into the United States" for humanitarian or public benefit purposes pursuant to § 1182(d)(5)(A). While this provision is still generally referenced with respect to "arriving aliens," see, e.g., Ibragimov v. Gonzales, 476 F.3d at 131 (describing parole under § 1182(d)(5)(A) as "an administrative practice whereby the government," for reasons specified in the statute, "allows an arriving alien who has come to a port-of-entry without a valid entry document to be temporarily released from detention and to remain in the United States pending review of his immigration status"), the language itself is not so limited, see 8 U.S.C. § 1182(d)(5)(A) (authorizing "parole into the United States" of "any alien applying for admission" (emphasis added)). Thus, in contrast to the pre-IIRIRA regime, even aliens already physically present in the United States who, upon inspection, are placed in removal proceedings, may be eligible for humanitarian or public benefit parole under § 1182(d)(5)(A) by virtue of their status as applicants for admission. See Ortega-Cervantes v. Gonzales, 501 F.3d at 1116 ("We see nothing that would preclude the government from paroling such an alien into the United States under § 1182(d)(5)(A), rather than conditionally paroling the alien under § 1226(a), so long as the government makes its intention clear."). At the same time, the executive retains the broader authority under § 1226(a)(2)(B) to order the release on bond or conditional parole of aliens who have been

17

arrested and detained pending a final removability determination if they pose no risk of harm or flight.

        c.      <u>"Conditional Parole" and "Parole into the United States" Retain Distinct Functions After IIRIRA</u>

Even after IIRIRA, the two parole provisions here at issue – one for "parole into the United States" and the other for release on "conditional parole" – continue to serve distinct functions. "Parole into the United States" pursuant to § 1182(d)(5)(A) allows the executive to permit certain aliens "on a case-by-case basis" to enter or remain in this country only for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); <u>see also</u> 8 C.F.R. § 212.5(b)-(c) (prescribing criteria for paroling arriving aliens into the United States). While such parole does not grant the alien "admission" to the United States, <u>see</u> 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A), it effectively halts removal of the alien until the underlying humanitarian or public benefit purpose is achieved, <u>cf.</u> <u>id.</u> § 1182(d)(5)(A) (providing that after purpose of parole has been served, alien's status reverts to that which he had at time he was inspected and paroled into United States, and "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission"); 8 C.F.R. § 212.5(e)(2)(i) (providing that upon termination of parole, "[a]ny further inspection or hearing shall be conducted . . . or any order of exclusion, deportation, or removal previously entered shall be executed"). In other words, the United States accepts an alien paroled under § 1182(d)(5)(A) into the country for as long as the humanitarian or public benefit purpose persists. For precisely this reason, "parole into the United States" under

18

§ 1182(d)(5)(A) is narrowly circumscribed.

By contrast, conditional parole under § 1226(a)(2)(B) does not mean that the alien has been accepted into the country, even temporarily. Much less does conditional parole defer removal. More akin to bail release in criminal cases, conditional parole merely permits an alien to remain at liberty based upon a determination that he poses no risk of danger or flight while his removal is actively sought. See 8 C.F.R. § 236.1(c)(8). Nothing in the language or structure of the statute signals Congress's intent to extend eligibility for adjustment of status to aliens released on conditional parole. See generally Mora v. Mukasey, 550 F.3d at 238 (observing that "where Congress has extended eligibility for adjustment of status to inadmissible aliens . . . it has generally done so unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both" (citing In re Briones, 24 I. & N. Dec. 355, 367 (B.I.A. 2007) (internal quotation marks omitted))). Indeed, the fact that Congress, in IIRIRA, specifically narrowed the executive's discretion under § 1182(d)(5)(A) to grant "parole into the United States," while at the same time leaving unmodified its discretion to grant conditional parole, strongly indicates that Congress "did not view 'conditional parole' as the equivalent of 'parole into the United States' . . . and thus as a path to lawful permanent residence under § 1255(a)." Ortega-Cervantes v. Gonzales, 501 F.3d at 1119.[15]

---

[15] IIRIRA struck from § 1182(d)(5)(A) the phrase "for emergent reasons or for reasons deemed strictly in the public interest" as grounds for granting parole into the United States and inserted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." See Pub. L. No. 104-208, Div. C, § 602(a), 110 Stat. at 3009-689. The

Moreover, construing "paroled into the United States" in § 1255(a) to include "conditional parole" risks conflict within the statutory scheme. See Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 370 (1986) ("[W]here possible, provisions of a statute should be read so as not to create a conflict."). First, such a construction would swallow § 1255(i), wherein Congress created a narrow exception to the general rule that aliens who illegally enter the United States are not eligible for adjustment of status. See 8 U.S.C. § 1255(i)(1)(B)-(C) (permitting aliens who unlawfully entered the United States to adjust their status if, inter alia, petitions for classification or labor certifications were filed on their behalf by April 20, 2001). Like the Ninth Circuit, we think it would be curious to read § 1255(a) to authorize unlawful entrants who do not meet § 1255(i)'s conditions to seek adjustment of status whenever they are conditionally paroled under § 1226(a)(2)(B). See Ortega-Cervantes v. Gonzales, 501 F.3d at 1120.

In addition, treating aliens released on "conditional parole" as having been "paroled

legislative history indicates that this change was animated by concern that parole under § 1182(d)(5)(A) was being used by the executive to circumvent congressionally established immigration policy. See H.R. Rep. No. 104-169, pt. 1, at 140-41 (1996). While we do not find it necessary to rely on legislative history to construe the "paroled into the United States" requirement for adjustment of status under § 1255(a), we agree with our sister circuits that such history only reinforces the conclusion that Congress did not intend that language to reference persons granted conditional parole under § 1226(a)(2)(B). See Delgado-Sobalvarro v. Attorney Gen. of the U.S., 625 F.3d at 786 ("[T]he history of the statute suggests that Congress sought to limit the universe of those who could adjust status to aliens whose admission was 'for urgent humanitarian reasons or significant public benefit' as set forth in [§ 1182(d)(5)(A)]."); Ortega-Cervantes v. Gonzales, 501 F.3d at 1119 ("In enacting IIRIRA, Congress did not express any intention to allow conditional parolees to adjust status as aliens 'paroled into the United States.'").

20

into the United States" could create tension between 8 U.S.C. § 1226(a)(3) (observing that conditional parolees are ordinarily ineligible for work authorization) and 8 C.F.R. § 274a.12(c)(11) (recognizing aliens paroled into the United States under § 1182(d)(5)(A) as eligible for work authorization).  It further raises the possibility that conditional parolees would cease accruing unlawful presence time.  See 8 U.S.C. § 1182(a)(9)(B)(ii) (deeming alien "unlawfully present in the United States if . . . present in the United States without being admitted or paroled").  Petitioners point to nothing indicating that Congress intended to extend these benefits, much less eligibility for adjustment of status, to inadmissible aliens by virtue of their being released on conditional parole pending resolution of ongoing removal proceedings.

Rather, we conclude that the statutory text, viewed alone and in the context of the larger statutory scheme, indicates Congress's intent that the phrase "paroled into the United States" in § 1255(a) references those aliens granted "parole into the United States" under § 1182(d)(5)(A) and not those released on "conditional parole" under § 1226(a)(2)(B).

D.      Internal Agency Memoranda Warrant No Different Conclusion

In urging otherwise, petitioners rely on two INS internal guidance memoranda, <u>see</u> Paul Virtue, General Counsel, INS, <u>Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens</u>, Legal Op. No. 98-10, 1998 WL 1806685 (Aug. 21, 1998) ("Virtue Memorandum"); Doris Meissner, Comm'r, INS, <u>Eligibility for Permanent Residence Under the Cuban Adjustment Act Despite Having Arrived at a Place Other Than a Designated Port-of-Entry</u> (Apr. 19, 1999), <u>reprinted in</u> 76 Interpreter Releases No. 17, at 676 app. 1 (May 3, 1999) ("Meissner Memorandum"), and DHS's Adjudicator's Field Manual, <u>see</u> U.S. Citizenship & Immigration Servs., DHS, Adjudicator's Field Manual § 54.1 (updated through Feb. 23, 2011).[16] Petitioners' reliance is misplaced.

First, because we identify no statutory ambiguity on the point at issue, there is no need to reach beyond the text to decide this case. <u>See</u> <u>Dobrova v. Holder</u>, 607 F.3d at 301; <u>Mizrahi v. Gonzales</u>, 492 F.3d at 158.

Second, even if there were ambiguity, such internal guidance documents are not binding agency authority and, thus, are generally unworthy of <u>Chevron</u>-style deference. <u>See</u> <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant <u>Chevron</u>-style

---

[16] The Adjudicator's Field Manual is available at http://www.uscis.gov (click "Laws" tab, then "Immigration Handbooks, Manuals, and Policy Guidance," and then "Adjudicator's Field Manual").

deference."); accord United States v. Connolly, 552 F.3d 86, 89 n.2 (2d Cir. 2008).

Third, petitioners overstate the extent to which the INS memoranda and Adjudicator's Field Manual support their urged interpretation of § 1255(a). Although the Virtue Memorandum concludes that aliens present in the United States who entered without inspection are eligible for parole under § 1182(d)(5)(A), see Virtue Mem. at 4, it does not state that "conditional parole" under § 1226(a)(2)(B) constitutes "parole into the United States" within the meaning of § 1255(a), see Ortega-Cervantes v. Gonzales, 501 F.3d at 1118. Relying solely on the Virtue Memorandum, INS Commissioner Meissner subsequently determined that "if the [INS] releases from custody an alien who is an applicant for admission because the alien is present in the United States without having been admitted," the INS should treat the alien as having been paroled into the United States. See Meissner Mem. at 3. The Meissner Memorandum, however, had a specific focus: aliens covered by the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966) (codified as a historical note to 8 U.S.C. § 1255). The memorandum does not state that every alien conditionally paroled under § 1226(a)(2)(B) necessarily becomes eligible for adjustment of status under § 1255(a). See Ortega-Cervantes v. Gonzales, 501 F.3d at 1118. Further, while § 54.1 of the Adjudicator's Field Manual appears to interpret the Meissner Memorandum's conclusion as applying to aliens generally, it also states that "[a] conditional parole should not be confused with an alien being paroled into the U.S. under [§ 1182(d)(5)(A)]." Adjudicator's Field Manual § 54.1.

Finally, even if these sources could be construed to support petitioners' interpretation,

23

we could hardly ignore the fact that they have been superseded by subsequent DHS guidance. In 2007, DHS's general counsel issued a memorandum that explicitly rejected the treatment of conditional parole under § 1226(a)(2)(B) as the equivalent of parole into the United States under § 1182(d)(5)(A). See In re Castillo-Padilla, 25 I. & N. Dec. at 263 (citing Gus Coldebella, General Counsel, DHS, Clarification of the Relation Between Release Under Section 236 and Parole Under Section 212(d)(5) of the Immigration and Nationality Act (Sept. 28, 2007)); see also Adjudicator's Field Manual § 40.6.2(a)(2)(ii) (added Mar. 3, 2009) ("DHS . . . no longer adheres to the 1998 INS opinion's indication that release under [§ 1226(a)(2)(B)] is the same as parole under [§ 1182(d)(5)(A)]."); John Bulger, Chief, Office of Field Operations, U.S. Citizenship & Immigration Servs., DHS, Clarification Regarding Processing of Initial Parole Requests Presented by Natives or Citizens of Cuba Who Are Released Under Section 236, 2009 WL 569428 (Feb. 4, 2009) (instructing DHS field adjudicators that "a Cuban native or citizen who has been released from custody under [§ 1226(a)(2)] cannot for that reason be found to have been 'paroled' under [§ 1182(d)(5)(A)] for purposes of eligibility for Adjustment of Status . . . pursuant to the [CAA]"). Thus, current internal DHS guidance is in accord with the conclusion we derive from the statutory text and context: that petitioners are not eligible for adjustment of status under § 1255(a) by virtue of their release on conditional parole under § 1226(a)(2)(B).[17]

_____

[17] Francisco-Lorenzo submits that DHS's consideration of adjustment of status applications from Cuban nationals conditionally paroled under § 1226(a)(2)(B), but not from similarly-situated non-Cubans, violates due process and equal protection. Because this argument relies on the superseded INS memoranda and does not reflect current DHS practice

24

E.   The BIA Reasonably Interprets "Conditional Parole" as Distinct from "Parole into the United States"

Even if we had identified ambiguity in the phrase "paroled into the United States" in 8 U.S.C. § 1255(a), that ambiguity would be resolved by according Chevron deference to the INA's precedential decision in In re Castillo-Padilla, 25 I. & N. Dec. 257. That decision, issued after dismissal of petitioners' appeals in this case, construed "conditional parole" under § 1226(a)(2)(B) as "a distinct and different procedure from 'parole' under [§ 1182(d)(5)(A)]." Id. at 258. Further, because the phrase "conditional parole" does not appear in either § 1182(d)(5)(A) or § 1255(a), which instead use the phrase "parole into the United States," see id. at 260, Castillo-Padilla held that an alien "is not eligible to adjust his status under [§ 1255(a)] on the basis of his release from custody on conditional parole." Id. at 263.

Having ourselves construed the phrase "paroled into the United States" in § 1255(a) to reference "parole into the United States" under § 1182(d)(5)(A), and not "conditional parole" under § 1226(a)(2)(B), we necessarily conclude that the BIA's own identical construction in Castillo-Padilla is reasonable and, thus, entitled to Chevron deference.

---

under the CAA, we do not address it further.

**III.    Conclusion**

To summarize, we conclude that:

1.  The requirement that an alien be "paroled into the United States" in order to seek adjustment of status under 8 U.S.C. § 1255(a) is not satisfied by the alien's release on "conditional parole" under § 1226(a)(2)(B).

2.  Because petitioners were present in the United States without being admitted or paroled, they were correctly ordered removed under § 1182(a)(6)(A)(i), and determined to be statutorily ineligible for adjustment of status under § 1255(a), despite having been released on conditional parole under § 1226(a)(2)(B).

The petitions for review are DENIED.

26