**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1679

ANGELICA MARIA DELGADO-SOBALVARRO,
a/k/a, Angelica Rathof, a/k/a, Maria Rathof;
LILLYETH DELGADO-CARVAJAL,
Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A78-961-793; A78-961-794)

Argued on July 13, 2009

Before:  RENDELL, FUENTES and ROTH, Circuit Judges

(Opinion filed: November 2, 2010)

Joseph C. Hohenstein, Esquire **(Argued)**
Orlow, Kaplan & Hohenstein
620 Chestnut Street, Suite 656
Philadelphia, PA   19106

Counsel for Petitioners


Gregory G. Katsas, Esquire
Assistant Attorney General
John C. Cunningham, I, Esquire
Senior Litigation Counsel
Saul Greenstein, Esquire **(Argued)**
Office of Immigration Litigation Civil Division
Jeffrey L. Menkin, Esquire
U. S. Department of Justice
P. O. Box 878
Ben Franklin Station
Washington, D. C.   20044

Counsel for Respondent

O P I N I O N

**ROTH**, <u>Circuit Judge</u>:

## I. **Introduction**

The issue in this case is whether an alien released on "conditional parole" under section 236 of the Immigration and Nationality Act (INA) has been "paroled into the United States" so that she is statutorily eligible to adjust her status under INA § 245 to that of a lawfully admitted permanent resident. Angelica Maria Delgado-Sobalvarro and her daughter, Lillyeth Delgado-Carvajal, petition for review of the order of the Board of Immigration Appeals (BIA) dismissing their application for adjustment of status. The BIA concluded that the petitioners were not statutorily eligible for adjustment of status because they were not paroled into the United States. For the reasons that follow, we will affirm the decision of the BIA and deny the petition for review.

## II. **Background**

Delgado-Sobalvarro and her daughter are natives of Nicaragua. They arrived in the United States on November 19, 2001, near Hidalgo, Texas. At that time, they were detained by immigration authorities and issued Notices to Appear, which charged them with removability pursuant to INA § 212(a)(6)(A)(i) for being present in the United States without having been admitted or paroled. Pending a decision on their

removability, the petitioners were released on conditional parole on their own recognizance in accordance with INA § 236.

Removal proceedings commenced in 2002. On June 6, 2003, Delgado-Sobalvarro married United States citizen James Rathof. Rathof then filed I-130 immediate relative petitions for Delgado-Sobalvarro and her daughter. Rathof and Delgado-Sobalvarro subsequently had two children together.

On August 14, 2006, Immigration Judge Fredric G. Leeds issued an order concluding that the petitioners were statutorily ineligible to adjust their status because they pointed to "no binding authority establishing that conditional parole under INA § 236(a)(2)(B) is considered parole for adjustment of status purposes." The IJ further ruled that, even accepting the petitioners' conditional parole argument, their failure to present valid entry documents still rendered them ineligible to adjust status. Additionally, because Delgado-Sobalvarro married Rathof during the pendency of her removal proceeding, the IJ concluded that she was ineligible to adjust status under INA § 245(e)(1). Nor could Delgado-Sobalvarro qualify for the exception provided by § 245(e)(3) for an alien who establishes by clear and convincing evidence that she married in good faith because she did not present any marriage documents. The IJ also denied the petitioners' request for a continuance in order that the I-130 immediate relative petition could be adjudicated. Accordingly, the IJ ordered the petitioners removed to Nicaragua.

Rather than appeal the IJ's decision, the petitioners filed a motion to reconsider. The petitioners argued that the IJ erred in holding that they were ineligible to adjust status and that

4

Delgado-Sobalvarro failed to establish the bona fides of her marriage by clear and convincing evidence. On September 26, 2006, the IJ denied the petitioners' motion to reconsider, holding that petitioners insufficiently addressed his prior reasons for concluding that they were ineligible to adjust status. The IJ also confirmed his previous ruling that Delgado-Sobalvarro failed to establish the validity of her marriage under § 245(e)(3) and that she could not do so "by merely *appearing* in Court with a child and pregnant." Finally, the IJ again denied the request for a continuance pending resolution of the I-130 petition filed by Rathof.

The petitioners appealed the IJ's decision to the BIA, arguing that (1) production of a hearing transcript was necessary to review the proceedings below, (2) the IJ erred in finding that conditional parole did not render them eligible to adjust status, (3) Delgado-Sobalvarro established the bona fides of her marriage, (4) the proceedings should have been continued to allow the I-130 immediate relative petition to be processed, and (5) the IJ prematurely denied their claims. On February 8, 2008, the BIA affirmed the IJ's orders and dismissed the appeal. First, the BIA found that the petitioners were not denied due process by not receiving hearing transcripts because, under the BIA's rules, such transcripts are not typically provided in appeals of motions to reconsider and the petitioners could not demonstrate prejudice. Second, the BIA agreed with the IJ that the petitioners were ineligible to adjust status because release on conditional parole "is not the type of 'parole' that would impact the [petitioners'] adjustment eligibility," a finding that rendered moot the validity of the marriage and the continuance pending a decision on the I-130 petition. Finally, the BIA determined that

5

the IJ's denial of the petitioners' claims was not untimely.  The BIA therefore affirmed the IJ's orders.

On appeal, the petitioners concede that they are removable as charged.  They contend, however, that their November 19, 2001, release on conditional parole pursuant to § 236 renders them eligible for an adjustment of status under § 245.

## III.  <u>Jurisdiction and Standard of Review</u>

We have jurisdiction over the petition pursuant to 8 U.S.C. § 1252(a).  We exercise plenary review over the BIA's determination that the petitioners are statutorily ineligible for adjustment of status.  *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005).  In so doing, we review the BIA's legal conclusions de novo, "including both pure questions of law and applications of law to undisputed facts."  *Rranci v. Att'y Gen. of U.S.*, 540 F.3d 165, 171 (3d Cir. 2008).

## IV.  <u>Discussion</u>

INA § 245 provides a mechanism whereby certain aliens present in the United States can adjust status to become lawful permanent residents.  8 U.S.C. § 1255(a).  Section 245(a) states:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive

6

an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Only if an alien has been "admitted or paroled into the United States" does she become eligible to adjust her status. In this case, however, the petitioners were released on "conditional parole;" they were not "admitted" within the meaning of § 245. *Cf. Zheng v. Gonzales*, 422 F.3d 98, 117 (3d Cir. 2005) ("Paroled aliens are not admitted to the United States."). Therefore, the only question presented is whether the petitioners were "paroled into the United States."

There are two separate INA provisions that authorize the parole of aliens. First, INA § 212(d)(5)(A) specifically refers to "parole into the United States" and provides:

> The Attorney General may . . . *parole into the United States* temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added). In contrast, INA § 236(a) refers to "conditional parole" and provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in

7

subsection (c) of this section and pending such decision, the Attorney General –

> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
>> (A) bond of at least $1,500 with security provided by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) *conditional parole*; but
>>
>> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a) (emphasis added).

The petitioners raise a question of first impression in this Circuit: does conditional parole under § 236 constitute parole into the United States for the purposes of adjustment of status under § 245? We conclude that it does not.

In *In re Castillo-Padilla*, the BIA determined that conditional parole under § 236 differs from parole under § 212 and, therefore, does not make an alien eligible to adjust status under § 245. 25 I.&N. Dec. 257, 258 (BIA 2010). There, a

Mexican citizen was detained by immigration authorities for being present in the United States without having been admitted or paroled.  He was released upon posting bond and argued that he received conditional parole under § 236(a)(2)(B), which made him eligible to adjust his status under § 245.  On these substantially similar facts, the BIA concluded that "'conditional parole' under section 236(a)(2)(B) of the Act is a distinct and different procedure from 'parole' under section 212(d)(5)(A) and that the respondent is not eligible to adjust his status under section 245(a) based on his conditional parole." *Id.*

Because there is no clear, unambiguously expressed intent of Congress that speaks "directly . . . to the precise question at issue," we must analyze the BIA's interpretation of the statutes for reasonableness.  *Zheng*, 422 F.3d at 112 (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984)).  We will limit our inquiry "to determining whether the BIA's statutory interpretation is based on a reasonable, permissible construction of that statute."  See *Tineo v. Ashcroft*, 350 F.3d 382, 396 (3d Cir. 2003); see also id. ("There is . . . no longer any question that the BIA should be accorded *Chevron* deference for its interpretations of the immigration laws.").

Our examination of the statute confirms the BIA's interpretation – "parole into the United States" is not the same as "conditional parole."  First, the language of the adjustment provision in § 245(a) refers specifically to "paroled into the United States."  It is reasonable to interpret the statute to allow aliens to adjust status if they were "parole[d] into the United States" under § 212(d)(5)(A), which uses nearly identical phrasing, but *not* if they were released on "conditional parole"

9

under § 236(a)(2)(B).  *See Castillo-Padilla,* 25 I.&N. Dec. at 260 ("It is true that section 236(a)(2)(B) uses the phrase 'conditional parole,' but that is not the phrase used in section 245(a).").

Second, the history of the statute suggests that Congress sought to limit the universe of those who could adjust status to aliens whose admission was "for urgent humanitarian reasons or significant public benefit" as set forth in § 212(d)(5)(A).  *See Castillo-Padilla*, 25 I.&N. Dec. at 259 (§ 212 authorizes aliens to be temporarily paroled into the United States based on strict criteria, whereas § 236 places no such restrictions on aliens released on conditional parole).  The idea of "parole" was added to § 245 in 1960 to provide refugees an opportunity to become lawful permanent residents.  *See* S. Rep. No. 86-1651 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3124, 3137 (the addition of parole was "not to grant eligibility for adjustment of status . . . to aliens who entered the United States surreptitiously").  Congress maintained this distinction after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.  The most recent Department of Homeland Security memorandum on this issue explains that "parole under section 212(d)(5)(A) is permitted only after a case-by-case assessment" based on specific criteria.  (Mem. of Gus P. Coldebella, dated Sept. 28, 2007, at 4); *see also Castillo-Padilla*, 25 I.&N. Dec. at 263 (citing the Coldebella memorandum but noting that "such internal guidance memoranda are not binding authority").  In contrast, § 236 merely provides a mechanism whereby an alien may be released pending the determination of removal, as long as she is not a "danger to persons or property" and "is likely to appear for any further proceeding."  *Castillo-Padilla*, 25 I.&N. Dec. at 261 (citing 8 C.F.R. § 236.1(c)(8) (2010)).  To allow

10

aliens released on conditional parole under § 236 to adjust status under § 245 would frustrate Congress's intention to limit eligibility to refugees whose admission provides a public benefit or serves an urgent humanitarian purpose.

Here, the petitioners were released on conditional parole after arriving illegally in the United States. As in *Castillo-Padilla*, they submit that their parole under § 236 is equivalent to "parole into the United States" under § 212 and seek to adjust status. Although we are empathetic, we also are mindful of our obligation to respect what we find to be a reasonable interpretation of these statutes by the BIA. Accordingly, we conclude that the petitioners are not eligible to adjust status under § 245 on the basis of their § 236 conditional parole.

We similarly reject the petitioners' argument that the fundamental fairness of the proceedings was compromised by the absence of taped proceedings, the failure to provide transcripts, and the five-year delay in adjudicating the I-130 petitions. To establish a violation of due process, the petitioners must show that substantial prejudice resulted from the alleged procedural errors. *Khan v. Att'y Gen. of U.S.*, 448 F.3d 226, 236 (3d Cir. 2006). However, the errors that the petitioners urge us to recognize require too strained a series of inferential leaps. From 2002 through 2005, the petitioners' case was handled by Immigration Judge William Strasser. They argue that the absence of tape recordings from the proceedings before IJ Strasser prevents them from knowing what positions he took. Speculating that IJ Strasser may have taken a position favorable to the petitioners' claims, they assert that IJ Leeds would have been influenced by IJ's Strasser's positions and reached a different conclusion. Similarly, the petitioners argue that if the

11

BIA had granted their request for transcripts, the BIA would "probably" have identified "irregularities or mistakes" in the proceedings below that would have affected the BIA's decision. Not only are these contentions entirely speculative, but they do not give rise to any demonstrated prejudice, let alone substantial prejudice. Accordingly, the petitioners are not entitled to relief on these due process claims.

With respect to the I-130 petitions, the petitioners believe that the delay "may have impacted the IJ and Board decisions not to grant further continuances." However, the IJ was well within his discretion to deny the request for a continuance, since he concluded that the petitioners were not eligible to adjust their status. *See Khan*, 448 F.3d at 234-35 & n.7 (it is not an abuse of discretion to deny a continuance if the alien fails to make out a *prima facie* case for adjustment of status). We agree that the petitioners are ineligible to adjust their status. Thus, they cannot demonstrate prejudice from any delay in adjudicating the I-130 petitions.

## V. <u>Conclusion</u>

For the foregoing reasons, we will affirm the BIA's order and deny the petition for review.

12