**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1739
_____


STALIN OMAR VASQUEZ-BARAHONA,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                                    Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A087-590-145)
Immigration Judge: Miriam K. Mills
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2014

Before: CHAGARES, SCIRICA and NYGAARD, Circuit Judges

(Filed: December 17, 2014)

_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Stalin Omar Vasquez-Barahona ("Vasquez-Barahona") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Vasquez-Barahona, a native and citizen of Honduras, entered the United States without inspection in July, 2009, and during a credible fear interview with an asylum officer he expressed a fear of returning to Honduras. On September 21, 2009, the Department of Homeland Security commenced removal proceedings with the filing and service of a Notice to Appear, which charged that he is removable pursuant to Immigration & Nationality Act § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who was not in possession of a valid visa or other entry document. Venue was changed to Philadelphia, and Vasquez-Barahona applied for asylum, withholding of removal, and protection under the Convention Against Torture, expressing a fear that gang members in his home country would find and kill him.

On September 15, 2011, Vasquez-Barahona appeared for his merits hearing and testified in support of his application. Either in his testimony or in his statement in support of his asylum application, he relayed that he previously resided with his siblings and nephews in Villa Nueva Cortes. The household consisted of him, an older sister named Jennyfer, a younger stepsister named Fany, another younger stepsister, a younger stepbrother, and Jennyfer's two children. His mother had abandoned the family, leaving Jennyfer in charge. His father, who lives in Carson City, Nevada, provided financial

2

support by sending them money every week. Vasquez-Barahona stated that he became friends with a man named Melvin, who began a romantic relationship with his sister Jennyfer in March, 2008. He subsequently found out that Melvin was a member of the Mara Salvatrucha ("MS-13") gang after gang members started coming to his house to see Melvin.

Vasquez-Barahona stated that Jennyfer eventually broke up with Melvin in August, 2008, after he asked her to engage in criminal activities for his gang. After Jennyfer ended the relationship, she received three threatening telephone calls. The caller told Jennyfer to leave or she and her family would be killed. Vasquez-Barahona and his siblings believed that the caller was a gang member. In response to the call, he and his family moved in December, 2008 to his hometown of San Pedro Sula, which was approximately twenty minutes by car from their old home. Jennyfer also changed her cell phone number. However, shortly after moving to their new home, Jennyfer received a second call in January, 2009. Vasquez-Barahona stated that the anonymous caller told Jennyfer that it did not matter where she went because they would find her. Jennyfer received the third and final call in February, 2009. Vasquez-Barahona stated that the anonymous caller told Jennyfer that it did not matter if they could not find her because her brother [Vasquez-Barahona] would be the first one to go "to the cemetery," since they knew the places where he went. A.R. 167. The family then raised $3,800 from aunts and uncles and $200 from Vasquez-Barahona's father to pay a smuggler, and, in June, 2009, Vasquez-Barahona left Honduras for the United States.

3

In support of his application, Vasquez-Barahona submitted statements from Jennyfer and Fany, the 2008 and 2009 State Department Human Rights Reports for Honduras, and other country conditions evidence, which he argued showed that the Honduran Government is unable to control the gangs within its borders. The record also contains the 2010 Country Report for Honduras. Vasquez-Barahona's counsel also filed a pre-hearing brief, in which he argued that Vasquez-Barahona's family constituted a particular social group entitled to protection under the INA pursuant to Crespin-Valladares v. Holder, 632 F.3d 117, 125 (4th Cir. 2011) (family ties provide prototypical example of particular social group).[1]

In an oral decision issued on February 22, 2012, the IJ denied relief, finding Vasquez-Barahona's testimony to be incredible. The IJ made the alternative determination that Vasquez-Barahona did not establish past persecution because the unfulfilled telephone threats were insufficiently imminent and menacing to constitute persecution. The IJ noted that Vasquez-Barahona was not harmed during the four months that he remained in Honduras after the third and final telephone threat in February, 2009, and that none of his family members in Honduras were harmed. The IJ further found that Vasquez-Barahona did not establish a well-founded fear of persecution. Specifically, the IJ found that Vasquez-Barahona's family members who remain in Honduras, including Jennyfer, Fany, his other two stepsiblings, and two nephews, had not been harmed in any

---

[1] The IJ agreed with Vasquez-Barahona's "particular social group" argument, A.R. 213, and the Board did not disturb this determination on appeal. Under these circumstances, we will assume without deciding that Vasquez-Barahona is a member of a protected particular social group under the INA.

4

manner since he left. In addition, the IJ determined that Vasquez-Barahona failed to provide reasonably available corroborating evidence or sufficiently explain why he could not submit such evidence. The IJ found that corroboration should have been provided from his aunt and father, who were residing legally in the United States. Last, the IJ determined that Vasquez-Barahona's testimony and documentary evidence were insufficient to establish that the Honduran government would be willfully blind to any gang violence or torture against him.

Vasquez-Barahona appealed to the Board of Immigration Appeals. Among other claims, he contended that the IJ lacked impartiality and showed it by cross-examining him. On February 26, 2014, the Board dismissed the appeal. The Board declined to address the IJ's adverse credibility finding and instead based its decision on the IJ's alternative determination that Vasquez-Barahona had not met his burden of proof. The Board, citing Li v. Att'y Gen. of U.S., 400 F.3d 157, 164-65 (3d Cir. 2005), agreed with the IJ that Vasquez-Barahona did not establish past persecution because the three telephone threats that his sister received were insufficiently imminent and menacing to constitute persecution. The Board noted that, regardless of whether gangs in Honduras were known to carry out their threats, Vasquez-Barahona was not "harmed in the months he remained in Honduras following the third and final threat, and none of his family members [had] been harmed in the years since his departure." A.R. 4.

Furthermore, the Board determined that Vasquez-Barahona did not have a well-founded fear of persecution because he did not establish that his fear was objectively reasonable. The Board observed again that he was not harmed in Honduras and that his

5

family members, including the sister who actually received the death threats, were not physically harmed in the five years since the last telephone call. The Board reasoned that Vasquez-Barahona's claimed fear was undercut by the fact that similarly situated family members had remained in Honduras without harm. In addition, the Board agreed with the IJ that Vasquez-Barahona failed to present reasonably available corroborating evidence or explain why he could not obtain it. In this regard, the Board noted that statements from his aunt and father would have been relevant to his claim and were reasonably available, considering that his aunt knew about his gang problems and that his father was in regular contact with him and his sister in Honduras. Next, the Board concluded that, because Vasquez-Barahona failed to satisfy the lower burden of proof for asylum, it followed that he also failed to satisfy the higher burden required for withholding of removal. Further, the Board affirmed the IJ's denial of the claim for CAT protection, for the reasons given by the IJ.

As a final matter, the Board denied Vasquez-Barahona's motion to remand his case on the ground that the IJ lacked impartiality and took on the role of a prosecutor. The Board noted that the IJ has the authority to present and receive evidence, as well as to interrogate, examine, and cross-examine an alien or witnesses in removal hearings pursuant to 8 U.S.C. § 1229a(b)(1). The Board then concluded that the IJ's "overall conduct and questioning [were] within proper judicial bounds." A.R. 5. The Board specifically noted that, in reading a portion of the Country Report that conflicted with Vasquez-Barahona's testimony regarding government actions in Honduras, the IJ was

6

giving him the opportunity to explain and clarify his allegation that the government is unwilling or unable to control the gangs.

Vasquez-Barahona has petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). In his brief, Vasquez-Barahona argues that the IJ violated his right to due process by cross-examining him, that the threats against him and his family were sufficiently menacing and imminent in nature to establish past persecution, and that the Board unreasonably required corroborating evidence. Moreover, he argues that the Board "appears to have required [him] to show a likelihood, rather than a possibility, of future persecution. Petitioner's Brief, at 16. Vasquez-Barahona does not challenge the Board's determination that he did not establish eligibility for statutory withholding of removal, 8 U.S.C. § 1231(b)(3), or CAT protection, 8 C.F.R. § 1208.16(c). We thus deem these issues waived. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004) (issue deemed waived unless party raises it in opening brief).

We will deny the petition for review. Where, as here, the Board issues its own decision on the merits, we review the Board's decision and consider the IJ's decision only insofar as the Board deferred to it. See Roye v. Att'y Gen. of U.S., 693 F.3d 333, 339 (3d Cir. 2012). Administrative findings of fact are reviewed for substantial evidence. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). We treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992). We review

7

constitutional claims *de novo*.  See McAllister v. Att'y Gen. of U.S., 444 F.3d 178, 185 (3d Cir. 2006).

To establish a due process violation, the alien must show that he was denied a full and fair hearing on the merits of his claim before a neutral and impartial arbiter, and a reasonable opportunity to present evidence on his behalf.  See Cham v. Att'y Gen. of U.S., 445 F.3d 683, 691 (3d Cir. 2006).  If he succeeds in establishing that he received insufficient process, he must then show that substantial prejudice resulted from this denial of due process.  See Delgado-Sobalvarro v. Att'y Gen. of U.S., 625 F.3d 782, 787 (3d Cir. 2010).  Vasquez-Barahona argues that the Board, in ruling that the IJ did not violate his due process rights by cross-examining him, ignored our decision in Abulashvili v. Att'y Gen. of U.S., 663 F.3d 197, 208 (3d Cir. 2011) (IJ violated alien's due process rights when she took over cross-examination after determining that government counsel was not prepared).  Petitioner's Brief, at 9.

Here, the IJ questioned Vasquez-Barahona regarding his claim that the police in Honduras could not protect him from the MS-13 gang.  A.R. 198-99.  For example, the IJ stated that "according to country background, … it indicates that there's a zero tolerance campaign against gang members going on in Honduras.  And that particularly in your area, San Pedro Sula, police are being criticized for being too tough."  Id. at 199.  His counsel objected to the IJ's reading of a portion of the Country Report, and, in response, the IJ explained that she was allowing Vasquez-Barahona to address a discrepancy between his claim regarding government acquiescence to gang violence and the information in the report demonstrating the Honduran government's efforts to curtail

8

gang activity. The IJ further noted that she had relied specifically on country information that Vasquez-Barahona highlighted to question him regarding his ability to relocate internally in Honduras. A.R. 206-08. Counsel also objected to a question from the IJ regarding the method of transportation used by Vasquez-Barahona's sister to get to her job. A.R. 203. See also Petitioner's Brief, at 10-12.

In Abulashvili, 663 F.3d at 208, we cautioned that the "Due Process Clause does not allow a neutral hearing officer to become the functional equivalent of counsel for one of the parties," but here, even though the IJ may have asked 74 questions, Petitioner's Brief, at 13, we conclude that Vasquez-Barahona's due process claim is meritless because the record does not show that the IJ took over the Government's cross-examination. In Abulashvili, we had no confidence that the IJ was merely trying to ensure that the alien had a full and fair opportunity to present his case because "the IJ ignored crucial parts of his testimony in finding omissions that simply did not exist." 663 F.3d at 208. Here, in contrast, the IJ did not ignore crucial parts of Vasquez-Barahona's testimony. Moreover, the IJ allowed counsel to ask additional questions on redirect after the Government's attorney had conducted his cross-examination, and the IJ's subsequent questioning clarified issues that already had been raised during direct and redirect examination by Vasquez-Barahona's counsel and Government counsel's cross-examination. The IJ's questions did not obstruct Vasquez-Barahona's ability to testify, and the country conditions information quoted by the IJ was accurate. Additionally, the record does not show that the IJ lacked courtesy or acted unprofessionally toward Vasquez-Barahona or his counsel. With respect to the issue of substantial prejudice, Vasquez-Barahona has not

9

shown that the outcome of his CAT claim would have been different if the IJ had conducted the hearing in a different way; in fact, he has not even pursued his CAT claim on appeal.

Turning to Vasquez-Barahona's next argument, to qualify for asylum, an applicant must establish that he has a well-founded fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b), 1231(b)(3). The applicant bears the burden of proving that he has suffered past persecution or has a well-founded fear of persecution. See id.; 8 C.F.R. § 1208.13(a). Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id. We conclude that substantial evidence supports the agency's determination that Vasquez-Barahona failed to establish eligibility for asylum on the basis of his claim of persecution. The Board determined that what happened to Vasquez-Barahona did not rise to the level of persecution, and the record does not compel a contrary conclusion. Where unfulfilled threats are the conduct at issue, they must be imminent and menacing in nature. See Li, 400 F.3d at 164 ("[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution."). The threats at issue here plainly do not meet the "imminent" test. Vasquez-Barahona was not harmed during the several months that he remained in

10

Honduras after the third and final telephone threat in February, 2009, and none of his family members in Honduras were ever harmed. There is no record evidence that the callers ever attempted to carry out the threats, and thus insufficient proof of past persecution.

In the absence of evidence of past persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the applicant must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id. Where he does not make a pattern or practice argument, the applicant must show that he would be individually singled out for persecution. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). We reject as unpersuasive Vasquez-Barahona's argument that the Board did not apply the correct legal standard in concluding that he did not have an objectively reasonable, well-founded fear of future persecution, and conclude that substantial evidence supports the Board's determination that his fear of returning to Honduras is not objectively reasonable. Unfulfilled, non-imminent threats are relevant when considering whether the applicant has a well-founded fear of persecution, see Li, 400 F.3d at 165 n.3, but the Board correctly determined that Vasquez-Barahona's claim of a well-founded fear of persecution is undermined by the fact that he was not physically harmed before he left for the United States and that none of his family members, including Jennyfer, who actually received the threats, were physically harmed in the five years since the last telephone call in February, 2009. See Lie, 396 F.3d at 537 (with respect to "reasonable, individualized fear of persecution, continued well-being of family

11

members who remain in home country cuts against argument that alien should fear returning).

Turning to Vasquez-Barahona's final argument, corroboration may be required, even from credible applicants, see Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001), where it is (1) reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Toure v. Att'y Gen. of U.S., 43 F.3d 310, 323 (3d Cir. 2006)). Vasquez-Barahona argues that it was unreasonable for the IJ to require affidavits or other evidence from his aunt and father because they were not in Honduras when the threats were made. Petitioner's Brief, at 17. Here, inadequate corroboration was not the only basis upon which relief was denied by the Board. Because we uphold the Board's determination that Vasquez-Barahona did not establish past persecution or a well-founded fear of future persecution, and this determination by itself is dispositive of his asylum claim, it is not necessary that we reach the issue whether Vasquez-Barahona also did not adequately corroborate his claim.

For the foregoing reasons, we will deny the petition for review.