PS4-079                                                             **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3529
_____

JOSE NETO,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Immigration Judge
(Agency No. A096-415-556)
Immigration Judge:  Honorable Andrew R. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015
Before:  FISHER, KRAUSE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: March 25, 2015)
_____

OPINION*
_____

PER CURIAM

    Pro se petitioner Jose Neto petitions for review of the Immigration Judge's ("IJ")

final order of removal.  We will dismiss in part and deny in part the petition.

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I.

Neto is a native and citizen of Brazil who entered the United States in 1994. He has resided in the United States without legal status since his arrival. In 2007, Neto was convicted in the United States District Court for the District of Massachusetts of bribing a government official and related alien smuggling charges. In 2010, he was again convicted on various charges relating to alien smuggling, for which he was given a 60-month sentence of imprisonment. See United States v. Neto, 659 F.3d 194, 196 (1st Cir. 2011).

Thereafter, the Department of Homeland Security ("DHS") issued a Notice of Intent ("NOI") to initiate expedited removal proceedings pursuant to 8 U.S.C. § 1228(b).[1] The NOI stated that Neto was a non-permanent resident deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon due to his conviction for alien smuggling. Neto contested removability, asserting that his conviction was not final because he had filed a motion under 28 U.S.C. § 2255. In April 2012, a Final Administrative Removal Order was entered against him. Neto then filed a petition for review, which this Court denied in February 2013 for lack of jurisdiction due to his failure to raise any colorable constitutional claims or questions of law. See Neto v. Att'y Gen., 513 F. App'x 243, 246

---

[1] Expedited removal proceedings are permitted for the removal of an alien who has committed an aggravated felony and who does not have permanent resident status. See 8 U.S.C. § 1228(b)(1)-(2). In contrast to standard removal proceedings, there is no right to any discretionary relief. See 8 U.S.C. § 1228(b)(5). An alien who is placed in expedited proceedings is, however, allowed to seek a determination that he is eligible to apply for withholding of removal. See 8 C.F.R. § 1208.31. The regulations state that, upon request, an asylum officer is to conduct a reasonable fear interview, see 8 C.F.R. § 1208.31(b), and that the applicant may seek an IJ's review of the asylum officer's negative determination, see 8 C.F.R. § 1208.31(g).

2

(3d Cir. 2013) (per curiam).

It appears that Neto completed his criminal sentence in December 2013, and was then taken into DHS custody.  On April 17, 2014, he received a reasonable fear interview with an Asylum Officer under 8 C.F.R. § 1208.31.  Neto signed a waiver of his right to have a personal representative present during the interview, as well as a waiver of the 48-hour period to prepare for the interview.  (See A.R. 89, 90.)  At this point, Neto was given a list of free legal services providers.  (See id. at 94-95.)  Neto also signed a statement that he understood the purpose of the interview.  (See id. at 19, 25.)  It appears that a translator explained these forms to Neto, and Neto signed the transcript of the interview and initialed each page.  (See id. at 19-25.)  Neto also incorporated handwritten changes to the transcript.  (See id. at 20, 21.)

In the interview, Neto claimed that he feared returning to Brazil because many of the people whom he helped smuggle into the United States had been deported back to Brazil, and he believed that they would seek to injure or kill him because they lost their homes to pay their smuggling debt to him and/or because they had been deported.  He stated that these people were threatening his family, and he believed that the police would be unable to protect him.  On April 23, 2014, the Asylum Officer determined that Neto did not have a reasonable fear of persecution on account of a protected ground, as his fear was based on personal disputes with people victimized as a result of contracting with him to be smuggled into the United States.  The Asylum Officer also determined that Neto did not have a reasonable fear of torture under the Convention Against Torture ("CAT"), for

3

he had not established that the feared harm would be inflicted by, at the instigation of, or with the consent or acquiescence of public officials in Brazil.

On July 15, 2014, Neto filed Form I-863, requesting that an IJ review the Asylum Officer's decision pursuant to 8 C.F.R. § 1208.31(g).[2] Neto claims that, on July 19th, he received notification that the IJ's review would take place on Monday, July 21st. On July 21st, Neto testified before the IJ, reiterating his fear that the Brazilian police would be unable to protect him, and also stating that he feared that the police would not try to protect him due to widespread corruption. The IJ considered Neto's testimony, along with the U.S. State Department's Country Report on Brazil and the International Narcotics Control Strategy Report for Brazil. The IJ agreed with the Asylum Officer's determination, and concluded that Neto was not eligible for withholding of removal or CAT protection. The IJ's decision stated that it was a final order, and that "no appeal [wa]s available." (A.R. 4.)

Neto filed a petition for review of the IJ's decision, which the Government opposes.

II.

Neto's reasonable fear proceedings were governed by 8 C.F.R. § 1208.31(g)(1), which provides that, if the IJ concurs with the Asylum Officer's decision that the applicant did not establish a reasonable fear of persecution or torture, then "the case shall

---

[2] Neto completed Form I-863 on July 10, 2014, but the IJ's decision states that it was filed on July 15th.

be returned to the Service for removal of the alien.  No appeal shall lie from the [IJ]'s decision."  The IJ's decision thus constitutes a final order of removal over which we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).  However, because the basis for Neto's removal is his conviction for an aggravated felony, our jurisdiction is limited to reviewing colorable constitutional claims or questions of law.  See Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010).  The Government asserts that we should dismiss the petition for review because Neto has failed to raise any such claims.  "To determine whether a claim is colorable, we ask whether 'it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'"  Id. (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006)).  While we agree with the Government that we lack jurisdiction to review most of Neto's claims on this basis, we conclude that he has raised one colorable claim over which we have jurisdiction.

Neto asserts that the IJ exhibited bias when he declined to transfer Neto's case to Boston, Massachusetts — Neto alleged that, 10 years earlier, he paid an attorney there to represent him — or grant a continuance so that Neto could find another attorney.  These allegations present a colorable due process claim; however, this claim does not warrant relief here.  Absent "exceptional circumstances," the IJ's review of the asylum officer's determination must occur within 10 days of the applicant's filing Form I-863.  8 C.F.R. § 1208.31(g).  Here, Neto's Form I-863 was deemed filed on July 15, 2014, and the IJ's review took place on July 21st.  Because Neto did not establish that his case presented exceptional circumstances, he could have, at most, obtained a four-day continuance.

5

Although the IJ declined to transfer or otherwise continue Neto's case, nothing in the record suggests that this decision was the product of bias. Furthermore, Neto has not shown that his failure to obtain that brief continuance caused him to suffer substantial prejudice. See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010) ("To establish a violation of due process, the petitioner[] must show that substantial prejudice resulted from the alleged procedural errors."). Neto seems to assert that, if he had been represented by counsel, the IJ would have determined that he was eligible for relief because his attorney would have argued that, based on the Country Report, the Brazilian government was corrupt and acquiesced in torture. But this argument ignores the fact that Neto did testify that the Brazilian police were corrupt, and that the IJ stated in his decision that he reviewed and considered the Country Report. Neto has not shown that there is any argument that an attorney could have presented — either before this IJ or one in Boston — that would have changed the outcome of Neto's reasonable fear review proceedings. Accordingly, he cannot succeed on his due process claim.

We have considered Neto's remaining arguments, including those concerning the proceedings before the Asylum Officer, as well as those challenging the ultimate decision that he did not establish a reasonable fear of persecution or torture. We conclude that none of these claims raises a colorable constitutional claim or question of law. Accordingly, they will be dismissed.

We therefore dismiss in part and deny in part the petition for review.

6