**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-2913

_____

AJIYOSOLA AKANDE SOLOMON,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A072-168-877)
Immigration Judge:  Steven Morley

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2017

Before:  FISHER,* HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed:  April 6, 2017)

_____

OPINION**

_____

_____

* Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

Ajiyosola Akande Solomon petitions for review of the Board of Immigration Appeals' (BIA) decision denying his application for asylum under § 208 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158, withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and protection under Article 3 of the Convention Against Torture (CAT), as implemented by 8 C.F.R. § 1208.16-18. We will deny the petition.

I.

Solomon, a native of Nigeria, attempted to enter the United States in 1998 using a passport issued to Olaoluwa Victor Ibironke.[1] He lied to immigration officials about his purpose for traveling to the U.S. and was sent back to Nigeria and prohibited from entering or attempting to enter the U.S. for five years. Three months later, Solomon reentered the U.S. as a nonimmigrant tourist, using a passport issued to Ajiyosola Akande Solomon. Solomon thereafter married Joanne Hamilton, a legal permanent resident of the U.S. In 2004, four days after Hamilton became a naturalized U.S. citizen, Solomon filed a petition seeking status as a battered spouse of a U.S. citizen (Form I-360), and applied to register as a permanent resident (Form I-485). Solomon's Form I-485 application indicated that he had never been previously married, that he had never been known by any other name, and that he had never attempted to procure an immigration benefit by

---

[1] Although his true identity is unclear, *see infra* Section III. B., for purposes of this opinion we will refer to Appellant as Solomon.

fraud or been removed. On December 10, 2008, United States Citizenship and Immigration Services (USCIS) granted Solomon's application and adjusted his status to lawful permanent resident on the basis of his approved I-360 petition.

On January 3, 2012, Solomon filed an application for naturalization under § 319 of the INA. On his application, Solomon disclosed, for the first time, that he had been previously married to Folashade Ibironke, but maintained that he had never been known by any other name. USCIS discovered that, at the time he married Hamilton, he was still legally married to Folashade, that in 1998 he attempted to enter the U.S. using a different identity (Ibironke), and that when he made that attempt, he was removed from the U.S. Had Solomon disclosed on his Form I-485 that, at the time he married Hamilton he was still legally married to Folashade, he would have been found ineligible for lawful permanent-resident status. Accordingly, USCIS denied his naturalization application for failure to demonstrate that he was lawfully admitted for permanent residence.

In July 2013, removal proceedings were initiated against Solomon, who at the time of adjustment of status was inadmissible based on having sought an immigration benefit through fraud. At the beginning of the removal proceedings, Solomon submitted an application for asylum. Solomon claimed that he was persecuted in Nigeria for being a Christian and that he had suffered physical attacks. Ultimately, the Immigration Judge (IJ) found Solomon not credible and denied his applications for asylum, withholding of removal, and CAT protection. Solomon appealed the IJ's decision to the BIA. The BIA

3

dismissed Solomon's appeal, determining that Solomon was properly found removable as charged. Solomon timely petitioned for review.

## II.

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and (b)(9). We have jurisdiction under 8 U.S.C. § 1252(a). Where, as here, the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's opinion, we review both decisions.[2] We uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."[3] We review the BIA's legal determinations *de novo*.[4]

## III.

## A.

We first consider whether, under § 246(a) of the INA, the IJ lacked authority to order Solomon removed. Section 246(a) provides that "[i]f, at any time within five years after the status of a person has been otherwise adjusted . . . to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status."[5] Solomon argues that § 246(a) bars the ordering of removal five years after a petitioner's improper

---

[2] *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).
[3] *Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005) (citation omitted).
[4] *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008).
[5] 8 U.S.C. § 1256(a).

4

adjustment of status. We disagree. The statute of limitations bars the "*initiation* of removal proceedings after five years if based on improperly granted [lawful permanent residence] status."[6] Solomon fraudulently obtained lawful permanent resident status in December 2008. His removal proceedings were initiated in July 2013. Because the proceedings were initiated within the five-year period, the IJ properly exercised jurisdiction over Solomon's case.

B.

We next determine whether the IJ erroneously found that Solomon's claims in support of his asylum application were not credible. An adverse credibility determination is a finding of fact.[7] We will affirm unless the evidence "was so compelling that no reasonable factfinder could fail to find requisite fear of persecution."[8]

The Attorney General has the discretion to grant asylum to "refugees."[9] A "refugee" is a person unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[10] Asylum seekers "have the burden to establish their eligibility for asylum through credible

---

[6] *Saliba v. Att'y Gen.*, 828 F.3d 182, 197 (3d Cir. 2016) (emphasis added).
[7] *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003).
[8] *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).
[9] 8 U.S.C. § 1158(b).
[10] *Id.* at § 1101(a)(42).

testimony."[11] If, after considering the "totality of the circumstances, and all relevant factors,"[12] the IJ determines that an asylum seeker has not met his burdens of proof and persuasion, the IJ must point to "specific, cogent reasons" that support his adverse credibility determination.[13]

Here, the IJ based his adverse credibility determination on Solomon's inconsistent testimony, material discrepancies between Solomon's testimony and documented evidence, and his evasive demeanor. We find that substantial evidence supports the IJ's adverse credibility determination. First, as noted by the IJ, Solomon's true identity is undetermined. Solomon testified at the removal hearing that his true name is Ajiyosola Akande Solomon, but he previously signed a sworn statement stating that his true name is Olaoluwa Victor Ibironke.

Second, the IJ noted a number of inconsistencies that undercut Solomon's claimed fear of persecution. Solomon initially testified that, in the four-year period after he secured permanent-resident status, he traveled to Nigeria three times. Solomon ultimately changed his testimony after he was confronted with documentary evidence showing that he traveled to Nigeria at least five times for a total of 140 days. An asylum seeker's repeated willful and voluntary trips to his home country can undermine an assertion of

---

[11] *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003).
[12] 8 U.S.C. § 1158(b)(1)(B)(ii).
[13] *Dia*, 353 F.3d at 250; *see* 8 U.S.C. § 1158(b)(1)(B)(iii).

well-founded fear of persecution there.[14] Also, at Solomon's 1998 interview at the U.S. border (as Ibironke), he stated that he had no fear of persecution, despite testifying at his removal hearing that, one month before the 1998 interview, he was brutally attacked based on his religious beliefs.[15]

Third, when asked, Solomon admitted that he lied under oath in the past to avoid removal and would do so again in the future. The IJ concluded that Solomon's testimony demonstrates his willingness to "engage in post-[hoc] rationalization" and do "whatever it takes" to stay in the United States.[16] Based on these inconsistencies there is substantial evidence to uphold the IJ's adverse credibility determination.[17]

Still, the IJ solicited evidence to rehabilitate Solomon's testimony and bolster his claimed fear of persecution.[18] Solomon produced medical documentation to corroborate an alleged attack, including a letter from a Nigerian hospital written 16 years after the referenced attack and a letter from a doctor in the U.S. But the letter from the Nigerian hospital did not identify its source of information or mention Solomon's claimed injuries,

---

[14] *See Jean v. Gonzales*, 461 F.3d 87, 91 (1st Cir. 2006).

[15] Although we view inconsistencies between the airport interview and removal hearing with caution when the arriving alien is not proficient in English, *see Balasubramanrim v. INS*, 143 F.3d 157, 163 (3d Cir. 1998), Solomon is college educated and speaks English well.

[16] A.R. 103.

[17] *See Xie*, 359 F.3d at 242-43 (upholding an adverse credibility determination based on "inconsistencies and omissions" in the record).

[18] *See Sandie v. Att'y Gen.*, 562 F.3d 246, 253 (3d Cir. 2009) ("It is reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification.").

and the letter from the U.S. doctor did not identify the basis for the doctor's expertise. Solomon also produced unsworn letters from his friends, who were not subject to cross-examination, and whose identities could not be established through passports, licenses, or addresses. After changing his testimony regarding how many attacks he reported to the police, Solomon testified that he could not produce any police reports to substantiate his claims. Finally, Solomon's country condition evidence focused on the religious violence in northern Nigeria, while Solomon testified that he lived in the southwest.

Because the evidence was not "so compelling that no reasonable factfinder could fail to find requisite fear of persecution" we will uphold the BIA's adoption of the IJ's adverse credibility determination.[19] Solomon has failed to demonstrate that the IJ or BIA erred in rejecting his application for asylum, withholding of removal, and CAT relief.[20]

### C.

Finally, Solomon contends that the IJ conducted the proceedings in a manner that violated his due process rights. In this context, due process requires that aliens threatened with deportation have the "right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[21] To establish a due process violation, a

---

[19] *Elias-Zacarias*, 502 U.S. at 483-84.
[20] Because we, like the BIA, find that the credibility determination is dispositive of the issue of the asylum application's timeliness, we do not reach the issue.
[21] *Abdulrahman*, 330 F.3d at 596 (internal quotation marks omitted).

petitioner "must show that substantial prejudice resulted from the alleged procedural errors."[22]

Solomon argues that the IJ's determinations that Solomon did not suffer past persecution or have a well-founded fear of future persecution indicate the IJ's bias against him. Disagreeing with the IJ's interpretation of the evidence is insufficient to demonstrate that the IJ's ultimate determination was the result of bias or prejudgment.[23]

Solomon also argues that the IJ's failure to consider how Solomon's migraine medication affected his testimony demonstrates bias. Solomon does not dispute that, before his direct examination, the IJ asked him if he was taking medication that would impair his ability to testify and that he responded that he was not. Solomon instead claims that he answered in the negative because he forgot that he took a pill the night before. Solomon did not reveal his concerns about the medication to the IJ until two weeks after the hearing, at which point he did not submit evidence of how the medication could have affected his testimony. Solomon did not produce such evidence on appeal to the BIA. In its absence, we cannot conclude that the IJ's failure to consider the medication's effect on Solomon's testimony was a procedural error that caused prejudice. Because Solomon has not established that the IJ failed to act impartially or deprived him of an opportunity to testify fully, his due process claims fail.

---

[22] *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010).
[23] *See Matter of D-R-*, 25 I. & N. Dec. 445, 455 (B.I.A. 2011) (finding adjudicator is not required to interpret evidence in the manner advocated by the respondent).

## IV.

For the reasons set forth above, we will deny Solomon's petition for review.