**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3652
_____

MORDECHI YITZCHOK SAMET,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A028-513-166)
Immigration Judge: Jack H. Weil

Submitted under Third Circuit LAR 34.1(a)
On June 19, 2020

Before:  JORDAN, MATEY and ROTH, <u>Circuit Judges</u>

(Opinion filed December 29, 2020)

O P I N I ON*

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**ROTH**, <u>Circuit Judge</u>:

I.

This case requires us to determine whether a transcript from an immigration hearing, containing numerous "indiscernibles" due to recording technical issues, infringes an alien's procedural due process rights under the Fifth Amendment. Because we conclude it is unlikely that a better transcript would have changed the outcome of this case, we will deny Mordechai Yitzchok Samet's petition for review.

II.

Samet, a native of Israel, arrived in the United States in 1987. In 2003, he was convicted of thirty-five counts of various offenses, including racketeering; mail, wire, and bank fraud; conspiracy to commit money laundering; and conspiracy to make false claims in connection with federal income tax returns. He was sentenced to 327 months' imprisonment. In 2018, Samet was charged with being removable in connection with his convictions. Conceding the charges, Samet applied for readjustment of status and requested a discretionary waiver based on the extreme hardship that would befall his wife if he were removed. In support of his application, he submitted a written declaration describing his history, why he committed the crimes, how his incarceration impacted his family, how he repented and took responsibility for his past acts, and how he productively used his time in prison to counsel other inmates. He testified before the IJ to this effect.

Samet encountered technical difficulties when testifying because he was appearing by video from the federal correctional institution where he was serving his sentence. The IJ noted that there was "feedback" and "echoing," which appeared to be caused by Samet's

testifying in a large room. The IJ asked Samet to reposition himself in the room and speak loudly, slowly, and distinctly; he asked Samet's counsel to phrase his questions so as to repeat each of Samet's answers, which both Samet's counsel and DHS counsel agreed was "a good way forward;"[1] he asked a correctional officer in the room to assist Samet; and he invited Samet's counsel to ask leading questions. The IJ also gave Samet the option of rescheduling the hearing for a later date. Samet preferred to continue.

The transcript of Samet's testimony spanned thirty-seven pages and contained ninety-three "indiscernible" notations. The IJ who heard Samet's testimony retired before issuing a decision. The new IJ relied on the transcript to conclude that Samet's criminal convictions were too serious to overcome the equities and denied the application for adjustment of status. Samet appealed, and the BIA affirmed. Samet subsequently petitioned for review. Samet argues that his case should be remanded to the BIA because the incomplete transcript, and the IJ's reliance on it, violated his right to due process.

## III.[2]

The Due Process Clause of the Fifth Amendment requires that aliens in removal proceedings receive "the opportunity to be heard at a meaningful time and in a meaningful manner."[3] Specifically, an alien in removal proceedings "(1) is entitled to factfinding based

---

[1] A.R. at 160.

[2] We have jurisdiction over final order of removal under 8 U.S.C. § 1252(a)(1). When an alien is found removable for having been convicted of an aggravated felony—as Samet was—our jurisdiction is limited to reviewing constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2); *Borrome v. Att'y Gen.,* 687 F.3d 150, 154 (3d Cir. 2012). We review such claims de novo. *Mudric v. Att'y Gen.,* 469 F.3d 94, 97 (3d Cir. 2006).

[3] *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), superseded on other grounds, *Saravia v. Att'y Gen.*, 905 F.3d 729,

3

on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests."[4] But "the question for due process purposes is not whether the BIA reached the *correct* decision."[5] Rather, in addition to establishing a violation of one of the above requirements,[6] an alien must "make an initial showing of substantial prejudice,"[7] meaning "a 'reasonable likelihood' of a different outcome" in the absence of the alleged error.[8] Mere speculation that the outcome would "probably" have been different, but for an alleged error, is insufficient.[9]

To that end, we have held that the existence of "indiscernible" notations in a transcript does not preclude "a fair review of [a petitioner's] claims for relief from deportation" when those errors did not "come at a critical juncture in the transcript," prevent "the import of many of the omissions [from being] detectable from the context of the dialogue," or "bear on [the petitioner's] failure to establish" his eligibility for the relief

736 (3d Cir. 2018).

[4] *Abdulai*, 239 F.3d at 549 (internal citations and quotations omitted); *see also Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (the "most basic of due process protections" is "a complete record of the proceeding"); *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("Due process demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ."); *Witjaksono v. Holder*, 573 F.3d 968, 971 (10th Cir. 2009) ("It is well settled that an alien in an immigration proceeding is entitled to a reasonably complete and accurate record to facilitate appellate review. . . . ").

[5] *Abdulai*, 239 F.3d at 550.

[6] *Id.*

[7] *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005).

[8] *Fadiga v. Att'y Gen.*, 488 F.3d 142, 160-61 (3d Cir. 2007) (internal quotations and citations omitted).

[9] *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010).

he sought.[10]  Thus, a decisive question in deciding whether Samet's transcript violates the Fifth Amendment is if it impacted the outcome of his case.

Samet argues he was denied a meaningful opportunity to be heard and suffered serious prejudice as a result.  He claims his lawyer's ability to examine him was severely hindered by the defective equipment, and that his lawyer was forced to materially limit the scope of Samet's testimony.  Further, according to Samet, some of the "indiscernibles" in his transcript appear in portions of his testimony that were vital to weighing the discretionary factors on whether to grant a § 212(h) waiver.  Those portions, Samet contends, include his testimony regarding his motivation for having committed the crimes, his payment of restitution and subsequent rehabilitation, and his counseling of fellow inmates to live honorable, crime-free lives.

However, the sheer fact that Samet's transcript contains "indiscernibles" at certain points or that his lawyer's examination was in some ways hindered does not mean that a better transcript or hearing would have changed the outcome of his case.[11]  Samet fails to identify even a single relevant fact that the transcript did not capture due to the "indiscernibles."  Rather, he merely asserts, in conclusory fashion, that some of the "indiscernibles" concern testimony on topics that might have led the IJ to exercise his discretion to waive Samet's criminal inadmissibility.  Further, the IJ did absorb each of Samet's arguments on why his inadmissibility should be waived.  The IJ summarized

---

[10] *McLeod v. INS*, 802 F.2d 89, 95 (3d Cir. 1986); *accord Delgado-Sobalvarro*, 625 F.3d at 787 (BIA's failure to produce a transcript did not render proceeding unfair where petitioners did not show prejudice).

[11] *See Fadiga*, 488 F.3d at 160–61; *Delgado-Sobalvarro*, 625 F.3d at 787.

Samet's testimony, noting his background, his two convictions and his remorse; the IJ also noted that Samet quickly paid his restitution in full, that he counseled other inmates while in prison, and that his wife was reluctant to return to Israel because she suffered there as a child. The IJ acknowledged Samet's willingness to take responsibility for his actions, his United States citizen family members, and the support that he had received from his family and community. The IJ ultimately found, however, that because Samet's criminal convictions were so gravely serious in both their nature and duration, the facts could not support the exercise of discretion to grant Samet a waiver of his criminal inadmissibility. Thus, Samet has not shown substantial prejudice resulting from the limited transcript or hearing.

Finally, Samet argues that the record of his removal proceeding requires remand because it is insufficient to constitute a verbatim recording under 8 C.F.R. § 1240.9. This claim, like the others, is of *due process* consequence only to the extent it alleges prejudice.[12] As we have explained, however, Samet has not demonstrated he suffered any prejudice.

IV.

Thus, we will deny Samet's petition for review of the order of the BIA.

---

[12] *Oroh v. Holder*, 561 F.3d 62, 65 (1st Cir. 2009) (rejecting argument that petitioner "need not show prejudice because he is *not* claiming a due process violation," and holding that "a claim of inadequate transcription" under § 1240.9 requires "'specific prejudice . . . sufficient to rise to the level of a due process violation'" (quoting *Teng v. Mukasey*, 516 F.3d 12, 18 (1st Cir. 2008))).